# STATE OF MICHIGAN

# COURT OF APPEALS

WAYNE COUNTY,

        Respondent-Appellant,

v

AFSCME LOCAL 3317,

        Petitioner-Appellee.

FOR PUBLICATION
August 28, 2018
9:00 a.m.

No. 339493
MERC
LC No. 16-000900

Before: MURPHY, P.J., and GLEICHER and LETICA, JJ.

MURPHY, P.J.

In the midst of a financial emergency, respondent, Wayne County (the County), entered into a consent agreement with the State Treasurer under 2012 PA 436, the Local Financial Stability & Choice Act (Act 436), MCL 141.1541 *et seq.* Pursuant to the consent agreement, the County was temporarily given a reprieve from being subject to mandatory collective bargaining under the public employment relations act (PERA), MCL 423.201 *et seq.*, for a period that will ultimately span approximately three years, ending October 1, 2018. The County's position is that the Michigan Employment Relations Commission (MERC) did not and does not have subject-matter jurisdiction to adjudicate unfair labor practice (ULP) charges during the three-year period. Petitioner, AFSCME Local 3317 (the Union), filed various ULP charges with MERC against the County, all of which, while filed at different times and pertaining to different conduct occurring before and during the three-year period, were pending after the County's obligation to engage in collective bargaining ceased. MERC ruled that the administrative law judge (ALJ) hearing the ULP charges has subject-matter jurisdiction to enter recommended orders on the charges. MERC further concluded that if a particular ULP charge concerned a failure to collectively bargain during the timeframe wherein the County had no obligation to bargain, the proper remedy would be dismissal for failure to state a claim, which is a matter for the ALJ to decide in the first instance, with MERC becoming involved only upon the filing of an exception. The County appeals MERC's decision regarding subject-matter jurisdiction. We hold that nothing in the language of Act 436 reveals a legislative intent to divest MERC of its subject-matter jurisdiction to hear and resolve ULP charges during the period in which a local government is not subject to the requirement that it participate in collective bargaining. Accordingly, we affirm.

-1-

Because examination and an understanding of the relevant statutes implicated in this case provide clarity when reviewing the history and background of the litigation between the parties, we begin our discussion by looking at the relevant statutory schemes.

## I. PUBLIC EMPLOYMENT RELATIONS ACT (PERA)

"The legislature may enact laws providing for the resolution of disputes concerning public employees, except those in the state classified civil service." Const 1963, art 4, § 48. Our Legislature enacted PERA, and "[t]he supremacy of the provisions of PERA is predicated on the Constitution . . . and the apparent legislative intent that . . . PERA be the governing law for public employee labor relations." *Rockwell v Crestwood Sch Dist Bd of Ed*, 393 Mich 616, 630; 227 NW2d 736 (1975); see also *Bank v Mich Ed Ass'n-NEA*, 315 Mich App 496, 500; 892 NW2d 1 (2016) ("PERA governs public-sector labor relations"). PERA drastically altered labor relations in Michigan with respect to public employees, reflecting legislative goals to protect public employees against ULPs and to provide remedial access to a state-level administrative agency with specialized expertise in ULPs. *Macomb Co v AFSCME Council 25 Locals 411 & 893*, 494 Mich 65, 78; 833 NW2d 225 (2013).

Section 10 of PERA sets forth a list of prohibitions and conditions related to public employment, MCL 423.210, and "[v]iolations of the provisions of section 10 shall be deemed to be unfair labor practices remediable by [MERC]," MCL 423.216. See *St Clair Intermediate Sch Dist v Intermediate Ed Ass'n/Mich Ed Ass'n*, 458 Mich 540, 550; 581 NW2d 707 (1998) (violations of MCL 423.210 constitute ULPs under MCL 423.216).[1] MCL 423.216 vests

---

[1] MCL 423.210(1) provides:

> A public employer or an officer or agent of a public employer shall not do any of the following:
>
> (a) Interfere with, restrain, or coerce public employees in the exercise of their rights guaranteed in section 9.
>
> (b) Initiate, create, dominate, contribute to, or interfere with the formation or administration of any labor organization. . . . A public employer may permit employees to confer with a labor organization during working hours without loss of time or pay.
>
> (c) Discriminate in regard to hire, terms, or other conditions of employment to encourage or discourage membership in a labor organization.
>
> (d) Discriminate against a public employee because he or she has given testimony or instituted proceedings under this act.
>
> (e) *Refuse to bargain collectively* with the representatives of its public employees . . . . [Emphasis added.]

"MERC with *exclusive jurisdiction* over unfair labor practices." *St Clair Intermediate*, 458 Mich at 550 (emphasis added); see also *Detroit Bd of Ed v Parks*, 417 Mich 268, 283; 335 NW2d 641 (1983); *Lamphere Schs v Lamphere Federation of Teachers*, 400 Mich 104, 118; 252 NW2d 818 (1977); *Rockwell*, 393 Mich at 630; *Bank*, 315 Mich App at 500.

The litigation between the parties in MERC implicated § 15(1) of PERA, which provides as follows:

> A public employer shall bargain collectively with the representatives of its employees as described in section 11 and may make and enter into collective bargaining agreements with those representatives. Except as otherwise provided in this section, for the purposes of this section, to bargain collectively is to perform the mutual obligation of the employer and the representative of the employees to meet at reasonable times and confer in good faith with respect to wages, hours, and other terms and conditions of employment, or to negotiate an agreement, or any question arising under the agreement, and to execute a written contract, ordinance, or resolution incorporating any agreement reached if requested by either party, but this obligation does not compel either party to agree to a proposal or make a concession. [MCL 423.215(1).]

For purposes of § 15(1) of PERA, "[a]fter the parties have met in good faith and bargained over the mandatory subjects placed upon the bargaining table, they have satisfied their statutory duty." *Detroit Police Officers Ass'n v Detroit*, 391 Mich 44, 55; 214 NW2d 803 (1974).

Accordingly, absent contemplation of Act 436, the County has a mandatory obligation to bargain collectively with unions representing county employees, doing so in good faith with respect to the terms and conditions of employment, and any ULP charge falls within the exclusive jurisdiction of MERC.

## II. LOCAL FINANCIAL STABILITY & CHOICE ACT (ACT 436)

Act 436 was designed to address financial emergencies involving local governmental units and to provide fiscal stability and accountability for those entities. MCL 141.1543. Under Act 436, the State Treasurer, as the "state financial authority" for "municipal governments," which by statutory definition include counties,[2] may conduct, under certain enumerated circumstances, preliminary reviews in order to help determine whether a county is experiencing probable financial stress. MCL 141.1544(1); MCL 141.1542(u)(*i*) and (n). The preliminary review process entails written notification to a county before commencement, an interim and final report by the State Treasurer, and then a determination by a "local emergency financial assistance loan board" whether "probable financial stress exists for the" county. MCL 141.1544(3).

---

[2] We shall limit our discussion of Act 436 to its application to financially distressed counties.

If probable financial stress is found, the Governor is required to appoint a "review team" for the county. MCL 141.1544(4). The review team then engages in its examination of the county's financial condition and prepares a written report, which must include statutorily-specified information, along with a conclusion whether a "financial emergency" exists in the county. MCL 141.1545(1) to (4). After receipt of the report and taking certain designated procedural steps, the Governor must determine whether a financial emergency exists in the county. MCL 141.1546(1) and (2).

If the Governor determines that a financial emergency exists, a county may appeal to the Court of Claims, but only when 2/3 of the members of the county's governing body adopt a resolution to appeal. MCL 141.1546(3). A county has various options to consider when faced with a determination that a financial emergency exists in the county, including, as relevant here, the option of entering into a "consent agreement." MCL 141.1547(1)(a). MCL 141.1548 provides details with respect to consent agreements, and subsection (11) states:

> Unless the state treasurer determines otherwise, beginning 30 days after the date a local government enters into a consent agreement under this act, that local government is not subject to section 15(1) of 1947 PA 336, MCL 423.215 [mandatory collective bargaining], for the remaining term of the consent agreement.

A reciprocal provision in PERA is MCL 423.215(9), which provides that "[a] unit of local government that enters into a consent agreement under the local financial stability and choice act . . . is not subject to subsection (1) [mandatory collective bargaining] for the term of the consent agreement, as provided in the local financial stability and choice act."

## III. CONSENT AGREEMENT

In light of severe financial distress, the County initiated and participated in proceedings under Act 436. And on August 21, 2015, upon the determination that a financial emergency existed in the County, the County entered into a consent agreement with the State Treasurer.[3] Paragraph 2 of the consent agreement provided, in pertinent part:

> (b) Consistent with section 8(11) of Act 436, beginning 30 days after the effective date of this agreement the County is not subject to section 15(1) of . . . [PERA], MCL 423.215, for the remaining term of this agreement.

> (c) Beginning 30 days after the effective date of this agreement, if a collective bargaining agreement has expired, the County Executive may exercise the powers prescribed for emergency managers under section 12(1)(ee) of Act 436 to impose by order matters relating to wages, hours, and other terms and

---

[3] As reflected in the agreement, the legislative authority of the County is vested in a County Commission, and the County Executive is the chief administrative officer of the County.

conditions of employment, whether economic or noneconomic, for County employees previously covered by the expired collective bargaining agreement. . . .

Taking into consideration the 30-day window in the consent agreement, the County's PERA obligation to engage in collective bargaining with the Union was suspended starting September 20, 2015. A collective-bargaining agreement that had existed between the parties expired in September 2014, and despite negotiations, a new collective-bargaining agreement could not be reached by September 20, 2015, although the County did enter into collective-bargaining agreements by that date with all other county-affiliated unions. The County Executive, exercising the powers of an emergency manger, proceeded to impose employment terms and conditions on Union members on September 21, 2015.

On October 18, 2016, the State Treasurer provided the County with written notification that the County had satisfied the terms of the consent agreement and was thus released from the agreement. However, for purposes of clarification and by letter dated November 10, 2016, the State Treasurer informed the County that as required by the consent agreement, the County had to adopt a two-year budget beginning the first fiscal year after the release. The State Treasurer recognized that the release on October 18, 2016, occurred 18 days after the start of the County's current fiscal year, but the State Treasurer indicated that the two-year budget contemplated by the Treasury Department at the time of the release was for fiscal years 2017 and 2018. As gleaned by reading paragraphs 2(d), 10, and 11 of the consent agreement, as well as § 21 of Act 436, MCL 141.1561, the protections of Act 436 remain in place for the two-year budgetary period, including suspension of the County's obligation to engage in collective bargaining under MCL 423.215(1). Thus, on the basis of the State Treasurer's notification of release, the State Treasurer's letter of clarification, provisions in the consent agreement, and Act 436, the County's duty to participate in collective bargaining will not be reinstated until October 1, 2018 (beginning of fiscal year 2019). Accordingly, from September 20, 2015, until October 1, 2018, the County was and is not subject to MCL 423.215(1), i.e., PERA's mandatory collective-bargaining provision. We shall refer to this timeframe as "the collective-bargaining suspension period."[4] As discussed later in this opinion, there was a dispute between the parties whether the collective-bargaining suspension period actually ended upon the release in mid-October 2016, as urged by the Union, or whether it ran until at least October 1, 2018, as urged by the County. The ALJ found in the Union's favor, but MERC agreed with the County, and MERC's ruling has not been challenged.

IV. LITIGATION BETWEEN THE PARTIES

The procedural history of MERC litigation between the parties is extensive and dizzying. For our purposes, we shall attempt to keep it simple, focusing only on the relevant procedural

---

[4] For purposes of the remainder of this opinion, when we make reference to "*a* collective-bargaining suspension period," we mean, generally-speaking, a period in which a local government has no legal obligation to engage in collective bargaining because of a financial emergency under Act 436.

facets of the litigation. The County and the Union entered into a collective-bargaining agreement that was effective from October 1, 2011, through September 30, 2014. In July 2014, the Union filed a ULP charge with MERC against the County, alleging various grounds constituting bad-faith bargaining under PERA that had taken place in 2014. The ULP charge covered negotiations and conduct by the County that occurred prior to the collective-bargaining suspension period. We shall refer to this ULP charge as ULP charge #1. In May 2015, the Union sought to amend ULP charge #1 to add new allegations of PERA violations relative to actions taken by the County in April 2015, which was also prior to the collective-bargaining suspension period. The ALJ allowed the Union to pursue the new ULP charge, but bifurcated it from ULP charge #1, effectively creating ULP charge #2, as based on the County's conduct in April 2015.

As indicated earlier, on August 21, 2015, after a financial emergency determination had been made, the consent agreement between the County and the State Treasurer was executed, which allowed for 30 more days of mandatory collective bargaining before the collective-bargaining suspension period commenced on September 20, 2015. In February 2016, the Union filed ULP charge #3 with MERC against the County, alleging a failure to engage in good-faith bargaining in violation of PERA with respect to the County's negotiations and conduct from August 21, 2015, up to September 20, 2015 (the consent agreement's 30-day window).

Finally, in November 2016, the Union filed ULP charge #4 with MERC against the County, alleging that despite the consent agreement expiring when the State Treasurer notified the County in October 2016 of a "release" from the agreement, the County nevertheless refused to engage in collective bargaining following the release. Other ULP accusations were also part of ULP charge #4. As noted earlier, because a two-year budgetary period had to essentially be tacked on to the date of the release, the collective-bargaining suspension period did not terminate in October 2016 but will do so at the end of September 2018. Relevant here, in November 2016, aside from filing ULP charge #4, the Union also filed a petition with MERC for mediation, as part of an effort to reopen collective bargaining negotiations with the County and as a prerequisite to binding arbitration under 1969 PA 312, MCL 423.231 *et seq.*, commonly referred to as "Act 312." See *Oakland Co v Oakland Co Deputy Sheriff's Ass'n*, 282 Mich App 266, 268; 765 NW2d 266 (2009), vacated in part on other grounds 483 Mich 1133 (2009). This mediation petition, like ULP charge #4, was premised on the Union's faulty position that the freeze on collective bargaining ended when the State Treasurer notified the County in October 2016 that it was released from the consent agreement.

To recap, ULP charges ## 1 through 3 concerned alleged PERA violations that took place before the collective-bargaining suspension period commenced, while ULP charge #4 was in regard to conduct that occurred during the collective-bargaining suspension period, although the Union did not view it that way. The Union's mediation petition sought to force collective bargaining during the collective-bargaining suspension period. The dispute between the parties took two different tracks, one pertaining to all four ULP charges filed by the Union and one concerning the Union's mediation petition.

With respect to the four ULP charges, the County filed a motion for summary disposition with the ALJ, arguing, in pertinent part, that the consent agreement and Act 436 deprived MERC of authority and jurisdiction to hear and resolve the ULP charges that were based on violations of

PERA's mandatory, good-faith collective-bargaining provision, MCL 423.215(1), regardless of whether the alleged violations occurred before or during the collective-bargaining suspension period. The County's position was that MERC could not adjudicate § 15(1) ULP charges during the pendency of the collective-bargaining suspension period. The ALJ agreed with the Union that the consent agreement no longer protected the County following the release notification by the State Treasurer in mid-October 2016. Additionally, the ALJ concluded that MERC did not lose its jurisdiction to adjudicate ULP charges brought pursuant to § 15(1) of PERA when the conduct at issue occurred while the County was still subject to § 15(1). The ALJ recognized the County's burden of having to litigate § 15(1) ULP charges during the collective-bargaining suspension period, which is why the ALJ had held the proceedings in abeyance. The ALJ determined, however, that nothing in Act 436 could "be read to stand for the premise that past transgressions are immediately unassailable because of a consent agreement." Accordingly, the ALJ issued a recommended order denying the County's motion for summary disposition of the four ULP charges.

Within a couple of months of the ALJ's decision, MERC, the full commission, issued a decision and order on a motion by the County to dismiss the Union's mediation petition. MERC dismissed the petition after finding that the collective-bargaining suspension period indeed extended to October 1, 2018, precluding MERC from ordering the County to participate in mediation for purposes of forming a new collective-bargaining agreement. The Union has not challenged that decision. In its decision and order, MERC mentioned that the parties had referred to the earlier contrary determination by the ALJ that the consent agreement no longer permitted the County to avoid its obligation to engage in collective bargaining as of mid-October 2016. However, while recognizing that the ALJ had ruled differently, MERC observed that the ALJ's decision "did not dismiss or sustain either of the four unfair labor practice charges in their entirety," and therefore any review by MERC had to "await the filing of exceptions to the ALJ's decision and recommended order." Apparently, no exceptions to the ALJ's recommended order were ever filed.

Within a couple of weeks of MERC's decision, the ALJ issued a decision and recommended order with respect to ULP charge #1, which, again, pertained to negotiations and conduct by the County in 2014, prior to the collective-bargaining suspension period. In the decision, the ALJ acknowledged MERC's ruling that the collective-bargaining suspension period was not scheduled to end until October 1, 2018, which decision the ALJ fully intended to honor. The ALJ concluded, however, that nothing in MERC's decision precluded the ALJ from exercising jurisdiction over ULP charge #1, or any of the ULP charges, except for a portion of ULP charge #4 that claimed a failure to engage in collective bargaining. The ALJ proceeded to substantively address ULP charge #1, finding that the Union had failed to establish a PERA violation by the County. The ALJ entered a recommended order to dismiss ULP charge #1.

Shortly before the ALJ issued its decision regarding ULP charge #1 and its authority to exercise jurisdiction over the ULP charges, the County had filed a motion for reconsideration with respect to MERC's earlier ruling dismissing the Union's mediation petition. In a decision on the reconsideration motion, MERC stated that although the County had prevailed on the mediation issue, the County was asking MERC "to reconsider our decision and to instruct . . . [the ALJ] to dismiss four unfair labor practice charge cases that were pending between the

parties at that time." MERC acknowledged that the ALJ had now recommended dismissal of ULP charge #1. MERC ruled:

> The County has based its motion for reconsideration on its assertion that the ALJ . . . has no jurisdiction over the unfair labor practice charges before him because the County is not currently subject to the duty to bargain. The County argues that Act 436, . . . PERA, and the Consent Agreement not only authorize the suspension of the County's duty to bargain, but also exempt it from responsibility for any alleged unfair labor practices that may have occurred prior to or during the term of the Consent Agreement.

> For the reasons that follow, we find no basis to conclude that either Act 436, . . . PERA, or the Consent Agreement exempt the County from responsibility for unfair labor practices. Beside the references to § 15(1) of PERA in Act 436, there are no other references in Act 436 to any provision of PERA. With the exception of the references to Act 436 in § 15(7), (8), & (9) of PERA, there are no references in PERA to Act 436. Nothing in the language of Act 436 discusses unfair labor practices or the Commission's subject matter jurisdiction.

> The suspension of a public employer's duty to bargain does not affect the Commission's jurisdiction over unfair labor practice charges against that public employer. As explained in further detail below, the effect of the suspension of a public employer's duty to bargain under Act 436 is to limit the kinds of actions or inaction by that employer that could constitute an unfair labor practice. If a public employer whose duty to bargain has been suspended is charged with an unfair labor practice prior to or during the term of the suspension, the Commission is responsible for determining whether the alleged unfair labor practice has been committed.

MERC proceeded to rule that a ULP charge can be based on conduct other than a failure to bargain collectively or to do so in good-faith, citing MCL 423.210(1)(a) to (d). See footnote 1 of this opinion. Therefore, the suspension of the County's duty to bargain would have no bearing on such claims. MERC then observed "that the issue of whether an ALJ can adjudicate an unfair labor practice charge against the County is not determined by whether the County is subject to § 15(1) of PERA." MERC next stated that an ALJ has the authority to assess whether a ULP charge states a claim upon which relief can be granted under PERA and, if not, the ALJ should recommend dismissal of the charge. But if a ULP charge does state a claim, the ALJ has the authority to determine whether material facts are in dispute and to hold an evidentiary hearing if there is a material factual dispute. MERC noted that if a ULP charge is brought alleging that a public employer refused to bargain during a period in which the duty to bargain was suspended, the charge would not state a claim upon which relief could be granted. This statement reflected that MERC would still have subject-matter jurisdiction over such a charge.

MERC found that the County's motion for reconsideration did not indicate that the Union's ULP charges were limited to claims that the County "breached its duty to bargain between September 20, 2015, and October 1, 2018." MERC then explained:

If the charges before [the] ALJ . . . allege that the County violated its duty to bargain before the County's duty to bargain was suspended, those matters would be within the subject matter jurisdiction of this Commission and would be properly before [the] ALJ . . . . Moreover, if the charges before [the] ALJ . . . allege that the County violated provisions of PERA other than § 10(1)(e) or § 15(1)[collective bargaining requirement], those matters would be within the subject matter jurisdiction of this Commission and would be properly before [the] ALJ . . . .

This passage seems to suggest a view that a ULP charge of a failure to engage in collective bargaining during a period of suspension is not within MERC's subject-matter jurisdiction; however, that construction would contradict MERC's earlier observation that such a charge would simply reflect a failure to state a claim upon which relief can be granted. And later in its ruling, MERC stated that "[i]f the County simply failed to bargain during the period in which the County has no duty to bargain, that failure to bargain is not an unfair labor practice. However, it currently remains within the jurisdiction of [the] ALJ . . . to determine whether an alleged unfair labor practice has been committed by the County."

MERC next determined that the County's motion for reconsideration failed to identify the dates on which the County was alleged to have engaged in ULPs and that the County had "not asserted anything to indicate that any of the unfair labor practice charges fail[ed] to state a claim." But MERC then explained that even had the County asserted that the Union's ULP charges did not state a claim upon which relief could be granted, MERC "could not consider the matter unless and until exceptions were filed to [the] ALJ's decision and recommended order addressing the matter." MERC stated that "[e]ven if we thought it was appropriate under the circumstances of this case to review the ALJ's rulings, which we do not, we could not legally act in a manner contrary to the requirements of § 16 of PERA and Commission Rule 161(7)." Section 16(b) of PERA provides, in relevant part:

[I]f the evidence is presented before a commissioner of the commission, or before examiners thereof, the commissioner, or examiners shall issue and cause to be served on the parties to the proceeding a proposed report, together with a recommended order, which shall be filed with the commission, and if an exception is not filed within 20 days after service thereof upon the parties, or within such further period as the commission may authorize, the recommended order shall become the order of the commission and become effective as prescribed in the order. [MCL 423.216(b).]

And Mich Admin Code, R 423.161(7) provides:

Rulings by an administrative law judge on any motion, except a motion resulting in a ruling dismissing or sustaining the unfair labor practice charge in its entirety, shall not be appealed directly to the commission, but shall be considered by the commission only if raised in exceptions or cross exceptions to the proposed decision and recommended order filed under R 423.176.

MERC concluded that the ULP charges were properly before the ALJ for determination whether the charges stated a claim upon which relief could be granted and, if so, to decide whether the Union had established the charges at an evidentiary hearing.

The County filed a claim of appeal in this Court on August 1, 2017, and on November 17, 2017, the Union filed a motion to dismiss the appeal on the basis that this Court lacked jurisdiction to decide the appeal, as it did not fall within the parameters of MCL 423.216(e).[5] The motion was denied by a panel of this Court. *Wayne Co v AFSCME Local 3317,* unpublished order of the Court of Appeals, entered December 21, 2017 (Docket No. 339493).

## V. ANALYSIS

### A. STANDARDS OF REVIEW

In *AFSCME Council 25,* 494 Mich at 77, the Michigan Supreme Court recited the standards of review applicable to a decision by MERC, stating:

> In a case on appeal from the MERC, the MERC's factual findings are conclusive if supported by competent, material, and substantial evidence on the whole record. Legal questions, which include questions of statutory interpretation and questions of contract interpretation, are reviewed de novo. As a result, an administrative agency's legal rulings are set aside if they are in violation of the constitution or a statute, or affected by a substantial and material error of law. [Citations and quotations marks omitted.]

This Court reviews de novo issues concerning subject-matter jurisdiction. *Winkler v Marist Fathers of Detroit, Inc,* 500 Mich 327, 333; 901 NW2d 566 (2017).

### B. PRINCIPLES OF STATUTORY CONSTRUCTION

The primary task in construing a statute is to discern and give effect to the Legislature's intent, and in doing so, we start with an examination of the language of the statute, which constitutes the most reliable evidence of legislative intent. *City of Coldwater v Consumers Energy Co,* 500 Mich 158, 167; 895 NW2d 154 (2017). When the language of a statutory provision is unambiguous, we must conclude that the Legislature intended the meaning that was

---

[5] MCL 423.216(e) provides, in part:

> Any party aggrieved by a final order of the commission granting or denying in whole or in part the relief sought may within 20 days of such order as a matter of right obtain a review of the order in the court of appeals by filing in the court a petition praying that the order of the commission be modified or set aside, with copy of the petition filed on the commission, and thereupon the aggrieved party shall file in the court the record in the proceeding, certified by the commission.

clearly expressed, requiring enforcement of the statute as written, absent any additional judicial construction. *Id.* Only when an ambiguity in a statute exists may a court go beyond the statute's words in order to ascertain legislative intent. *Id.* We must give effect to every word, phrase, and clause in a statute, avoiding a construction that would render any part of the statute nugatory or surplusage. *Id.* at 167-168.

An agency's construction of a statute for which it is charged the duty of executing is entitled to respectful consideration and should not be overruled absent cogent reasons; however, an agency's interpretation cannot bind the courts or conflict with the Legislature's intent as expressed in the statutory language. *In re Rovas Complaint Against SBC Mich*, 482 Mich 90, 103; 754 NW2d 259 (2008).

## C. DISCUSSION AND RESOLUTION

We hold that MERC has subject-matter jurisdiction to adjudicate ULP charges and that nothing in the language of Act 436 alters that jurisdiction. The jurisdiction extends to ULP charges filed before, during, and after a collective-bargaining suspension period and regardless whether the ULP charges concern conduct occurring within or outside of a collective-bargaining suspension period. MERC retains subject-matter jurisdiction to adjudicate ULP charges during a collective-bargaining suspension period. The County's position reflects a fundamental misunderstanding of subject-matter jurisdiction. As a starting point, an excellent discussion of subject-matter jurisdiction in general is found in *Altman v Nelson*, 197 Mich App 467, 472-473; 495 NW2d 826 (1992), wherein this Court explained:

Jurisdiction of the subject matter is the right of the court to exercise judicial power over a class of cases, not the particular case before it; to exercise the abstract power to try a case of the kind or character of the one pending. The question of jurisdiction does not depend on the truth or falsity of the charge, but upon its nature: it is determinable on the commencement, not at the conclusion, of the inquiry. Jurisdiction always depends on the allegations and never upon the facts. When a party appears before a judicial tribunal and alleges that it has been denied a certain right, and the law has given the tribunal the power to enforce that right, if the adversary has been notified, the tribunal must proceed to determine the truth or falsity of the allegations. The truth of the allegations does not constitute jurisdiction.

There is a wide difference between a want of jurisdiction, in which case the court has no power to adjudicate at all, and a mistake in the exercise of undoubted jurisdiction, in which case the action of the trial court is not void, although it may be subject to direct attack on appeal. . . . When there is a want of jurisdiction over the parties or the subject matter, no matter what formalities may have been taken by the trial court, the action is void because of its want of jurisdiction. . . . .

Where jurisdiction of the subject matter and the parties exist, errors or irregularities in the proceedings, however grave, although they may render the judgment erroneous and subject to be set aside in a proper proceeding for that

purpose, do not render the judgment void; until the judgment is set aside, it is valid and binding for all purposes and cannot be collaterally attacked. Once jurisdiction of the subject matter and the parties is established, any error in the determination of questions of law or fact upon which the court's jurisdiction in the particular case depends is error in the exercise of jurisdiction. Jurisdiction to make a determination is not dependent upon the correctness of the determination made. [Citations omitted.]

ULP cases or charges constitute the "class of cases" over which MERC has the authority to exercise powers of adjudication. MCL 423.210; MCL 423.216.

With respect to administrative agencies, subject-matter jurisdiction poses the question whether an agency has the authority to hear and resolve a particular cause or matter. *Detroit Pub Sch v Conn*, 308 Mich App 234, 242; 863 NW2d 373 (2014). Administrative agencies are creatures of the Legislature, and their authority is governed by statute; there are no common-law agency powers. *Id.* The Legislature may confer on an administrative agency the power to conduct hearings, find facts, and exercise discretion, but the power and authority conferred on the agency must be by clear and unmistakable language. *Id.* at 242-243. And as a general proposition, the divestiture of subject-matter jurisdiction must also be stated clearly and unambiguously. See *Campbell v St John Hosp*, 434 Mich 608, 614; 455 NW2d 695 (1990); *Leo v Atlas Indus, Inc*, 370 Mich 400, 402; 121 NW2d 926 (1963) ("The divestiture of jurisdiction . . . is a serious matter and cannot be done except under clear mandate of law."); *Crane v Reeder*, 28 Mich 527, 533 (1874) ("[I]t is very natural and reasonable to suppose that the Legislature, in so far as they should think it needful to authorize interruptions and the shiftings of jurisdiction, would express themselves with clearness and leave nothing for the play of doubt and uncertainty.").

The Legislature conferred on MERC the power and authority to adjudicate ULP charges, MCL 423.216, and it did not withdraw that power in Act 436 within the setting of financial emergencies. Instead, under Act 436, the Legislature simply curtailed a union's ability to force collective bargaining during a collective-bargaining suspension period, and any effort by a union to seek redress in MERC because of a failure to bargain during that period will not be sustainable, but it is left to MERC, *in the exercise of its subject-matter jurisdiction*, to render that ruling. Under the plain and unambiguous language of Act 436, and specifically MCL 141.1548(11), which is mirrored in ¶ 2(b) of the consent agreement, the County is not subject to the requirement or mandate to engage and participate in collective bargaining during the collective-bargaining suspension period. But the Legislature did not express in Act 436 that local governments are not to be subjected to ULP charges during a collective-bargaining suspension period or that MERC cannot exercise its subject-matter jurisdiction over ULP charges during that timeframe. Had the Legislature intended to afford such greater protection to a financially-distressed local government, it could easily have done so in plain, unambiguous, and understandable language.

Especially confounding is the County's position that MERC lacks subject-matter jurisdiction with respect to ULP charges that relate to conduct occurring before a county facing a financial emergency is even relieved of its duty to collectively bargain with a union, or ULP charges that have nothing to do with the obligation to bargain, e.g., discriminating against an

employee in regard to conditions of employment, MCL 423.210(1)(c). In either scenario, a duty or obligation would exist, i.e., to collectively bargain or to not discriminate, both of which support ULP charges upon a violation, respectively, MCL 423.210(1)(c) and (e), yet under the County's stance, no adjudication could be sought in MERC proceedings. There is simply no language in Act 436 or PERA that supports this view.

The County contends that the express language of Act 436 exempts the County from any ULP charge based on the duty to bargain for the entirety of the collective-bargaining suspension period. The County relies on the "not subject to" language in MCL 141.1548(11), arguing that the textual focus is on the "local government" and not on the date when a dispute may have arisen. This argument is unavailing. When MCL 141.1548(11) is examined in conjunction with MCL 423.215(1), the meaning is clear, expressing that a "local government is not subject to" the requirement to "bargain collectively with the representatives of its employees." The County effectively seeks an interpretation which provides that a "local government is not subject to" *any MERC litigation regarding* the requirement to "bargain collectively with the representatives of its employees." The emphasized language in the preceding sentence, or even words to that effect, are not found in Act 436 or PERA. "[A] court may read nothing into an unambiguous statute that is not within the manifest intent of the Legislature as derived from the words of the statute itself." *Roberts v Mecosta Co Gen Hosp*, 466 Mich 57, 63; 642 NW2d 663 (2002).

The County favorably cites *Martin v Murray*, 309 Mich App 37, 49; 867 NW2d 444 (2015), where this Court explained that Act 436 "exists to provide specific tools for resolving financial emergencies within local governments that are not available under more general legislation." Relying on *Martin*, the County argues that "[i]t is clear that [Act] 436 was intended to remove . . . bargaining obstacles and allow necessary and durable financial changes, not hold them in some long term limbo." Act 436 did remove bargaining obstacles for the financially-strapped County, allowing the County Executive to unilaterally impose employment terms and conditions in regard to Union employees applicable for the duration of the collective-bargaining suspension period. Further, Act 436 and the consent agreement plainly drove other unions representing county employees hurriedly to the bargaining table after the consent agreement was inked in order to avoid the extreme power that the County Executive would be able to wield after the agreement's 30-day window expired. The fact that the Union complained to MERC about conduct that primarily took place prior to the collective-bargaining suspension period, while possibly giving rise to some uncertainty or a state of limbo, is ultimately irrelevant to whether Act 436 deprives MERC of subject-matter jurisdiction. Act 436 simply does not encompass collective bargaining that transpires before the commencement of a collective-bargaining suspension period, and it does not speak to the issue of subject-matter jurisdiction relative to any point in time, before, during, or after a collective-bargaining suspension period.

The County additionally maintains "that if there is no duty to bargain[,] there is and can no longer be a breach of a non-existent duty and therefore no ULP hearings would be authorized or necessary." The problem with this argument proffered by the County is that it does not translate to a lack of subject-matter jurisdiction. During a collective-bargaining suspension period, there clearly is no duty to bargain and, therefore, there can be no breach of the duty to engage in collective bargaining within that time span. But that does not mean that ULP hearings are not authorized or that MERC has no subject-matter jurisdiction and cannot adjudicate a ULP dispute during the collective-bargaining suspension period. It is necessary for an arbiter to find

-13-

that there was no duty, even if it is clear that no duty exists for purposes of a particular ULP charge, and that arbiter is MERC. MCL 423.216; *St Clair Intermediate*, 458 Mich at 550 (MERC has "exclusive jurisdiction over unfair labor practices"). As aptly recognized by MERC, if a ULP charge claims a failure to participate in good-faith collective bargaining during a collective-bargaining suspension period, the charge is subject to dismissal for failure to state a claim, not lack of subject-matter jurisdiction. The County's argument is akin to a defendant property owner arguing that a circuit court lacks subject-matter jurisdiction in a premises liability action seeking over $25,000 in damages because the suing plaintiff did not allege facts or submit evidence showing that a legal "duty" was owed by the property owner to the plaintiff. The absence of a duty would not deprive the circuit court of subject-matter jurisdiction; it would merely provide a basis for summary dismissal of the premises liability action under MCR 2.116(C)(8) or (10).

To an extent, the County's argument entails an exercise in procedural gymnastics— should an ALJ recommend summary dismissal for failure to state a claim or summary dismissal for lack of subject-matter jurisdiction. However, there is, of course, an indisputable difference between these two rules that demand dismissal of an action, see MCR 2.116(C)(4) and (8), and while Act 436 can plainly serve as a basis to dismiss a ULP charge for failure to state a claim, it cannot do so on the basis of lack of subject-matter jurisdiction, as there is nothing in the plain language of Act 436 that lends itself to such a construction. Moreover, once again, there was a duty to engage in collective bargaining before the collective-bargaining suspension period commenced. The County desires a PERA-litigation free period, but Act 436 does not provide that relief.

We next examine *Baumgartner v Perry Pub Sch*, 309 Mich App 507; 872 NW2d 837 (2015), upon which the County places great weight. The *Baumgartner* panel held that the State Tenure Commission (STC) did not have jurisdiction to hear the claims of the petitioners, who were teachers that had been laid off by the respondent school districts, and thus the STC lacked the authority to instruct ALJs to hear the petitioners' suits. As explained by the Court, before legislative amendments were passed in 2011, teacher layoffs were a mandatory subject of collective bargaining and almost all collective-bargaining agreements employed seniority as the method for determining the prioritization of layoffs. *Id.* at 511. The Court explained the impact of the amendments in 2011, stating:

> In 2011, this all changed when, for the first time in Michigan history, the Legislature exercised its constitutional role and decided that the Legislature and local school boards, not the unions or administrative agencies, would decide which teachers should be retained and which should be laid off in the event of a reduction in force. The key to this historic change was to remove the subject of teacher layoffs from the realm of collective bargaining. Doing so had the twofold effect of (1) removing the unions as decision-makers on layoff-related issues and (2) by definition, making it unnecessary for MERC to review layoff-related cases because they no longer implicated public-sector labor laws.
>
> To implement this dramatic shift in the law of teacher layoffs, the Legislature also mandated that Michigan's several hundred school boards make layoff decisions on the basis of merit, through the development of a mandated,

comprehensive evaluation system for public school teachers. To make it perfectly clear that these decisions would be made by the local school boards, and not be sidetracked by administrative agencies, the Legislature took the additional and somewhat unusual precaution of explicitly saying how and by whom the layoff decisions could be reviewed.

As stated, MERC obviously would no longer have any reason to address this subject, and thus assert jurisdiction. And because the . . . STC[] had, before the 2011 Amendments, asserted jurisdiction over a few teacher-layoff suits—wrongfully, in our view, and on the basis of a now nonbinding 1975 decision of our Court—the Legislature again took the unusual, but prudent, precaution of amending the teacher tenure act (TTA) to remove the slim statutory basis that the STC claimed gave it jurisdiction over layoff-related actions. *Finally, to make it absolutely clear that no administrative agency may review a school board's layoff decisions, the Legislature provided that a teacher's "sole and exclusive remedy" is to appeal the decision to the courts.* [*Id.* at 512-513 (emphasis added).]

This Court observed that MCL 380.1248 explicitly identifies the sole remedy for laid-off teachers, providing that a " '*teacher's sole and exclusive remedy* shall be an order of reinstatement commencing 30 days after a decision *by a court of competent jurisdiction.*' " *Id.* at 532, quoting MCL 380.1248(3).

There is no language in Act 436 that even remotely approaches the plain and unambiguous language of MCL 380.1248(3) that divests MERC of jurisdiction with respect to adjudicating teacher layoffs. The County's assertion that *Baumgartner* supports the proposition that Act 436's elimination of the duty to bargain in financial emergencies equates to eliminating MERC's subject-matter jurisdiction is devoid of merit. And the County's claims that MERC eviscerated Act 436 in this case and that MERC's decision regarding subject-matter jurisdiction was "[a]bsolutely lawless," do not stand scrutiny. Indeed, *Baumgartner* supports MERC's ruling in this case, considering that it reveals that the Legislature, if it intends to divest an adjudicative body or agency of its jurisdiction, even for a limited period, is more than familiar with the wording or language needed to accomplish that intended goal. And the Legislature did not employ such language in Act 436.

Finally, we conclude that any limitations that might be imposed by Act 436 on available remedies for ULP violations with respect to providing relief during a collective-bargaining suspension period have no relevancy to MERC's subject-matter jurisdiction to adjudicate ULP charges. MCL 423.216(b) provides, in pertinent part:

If upon the preponderance of the testimony taken the commission is of the opinion that any person named in the complaint has engaged in or is engaging in the unfair labor practice, then it shall state its findings of fact and shall issue and cause to be served on the person an order requiring him to cease and desist from the unfair labor practice, and to take such affirmative action including reinstatement of employees with or without back pay, as will effectuate the policies of this act.

If MERC finds that a ULP charge is true in regard to a claim that a public employer refused to engage in collective bargaining or failed to do so in good faith, MERC "has the discretionary power to issue an order to bargain in good faith." *Detroit Police Officers*, 391 Mich at 56-57. Act 436 would plainly prohibit MERC from ordering a local government to participate in collective bargaining during a collective-bargaining suspension period, which is why MERC dismissed the Union's mediation petition. Without commenting on the nature or propriety of possible available remedies for a ULP violation occurring before the commencement of a collective-bargaining suspension period, we conclude that MERC has subject-matter jurisdiction to adjudicate ULP charges, even *assuming* no remedy existed. As indicated at the outset of our discussion, subject-matter jurisdiction concerns the authority of a court or adjudicative body to exercise power "over a class of cases" or "to exercise the abstract power to try a case of the kind or character of the one pending." *Altman v Nelson*, 197 Mich App at 472. The Union presented four ULP charges, and MERC has the exclusive power, authority, and jurisdiction to adjudicate such charges, regardless whether a particular remedy might not be available.

In sum, we hold that nothing in the language of Act 436, let alone clear and unambiguous language, reveals a legislative intent to divest MERC of its subject-matter jurisdiction to adjudicate ULP charges during a collective-bargaining suspension period.

Affirmed. Having fully prevailed on appeal, we award taxable costs to the Union under MCR 7.219.

/s/ William B. Murphy
/s/ Elizabeth L. Gleicher
/s/ Anica Letica

-16-