*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

BLAKE MICHAEL MACK,

        Plaintiff-Appellee,

v

AMBER L. SCHMAUS,

        Defendant,

and

MARK SCHMAUS and SHANNON SCHMAUS,

        Appellants.

FOR PUBLICATION
September 10, 2025
2:43 PM

No. 367485
Livingston Circuit Court
LC No. 17-052437-DC

Before: CAMERON, P.J., and GARRETT and MARIANI, JJ.

GARRETT, J.

Changes in the composition of American families over the last 125 years have resulted in many states enacting visitation statutes to protect the relationships that children form with nonparent caregivers. *Troxel v Granville*, 530 US 57, 63-64; 120 S Ct 2054; 147 L Ed 2d 49 (2000) (opinion by O'CONNOR, J.). Also supporting the enactment of nonparent-visitation statutes is the notion "that children should have the opportunity to benefit from relationships with statutorily specified persons—for example, their grandparents." *Id*. at 64. In this case, appellants Mark and Shannon Schmaus sought visitation with their granddaughter under Michigan's grandparenting-time statute, MCL 722.27b. They appeal by leave granted[1] the trial court's order denying their motion. Because the term "opportunity to be heard" in MCL 722.27b(4)(a) includes, at a minimum, the right to testify, the trial court erred by denying the Schmauses a hearing within

---

[1] *Mack v Schmaus*, unpublished order of the Court of Appeals, entered March 12, 2024 (Docket No. 367485).

the meaning of that statute. For that reason, and other reasons set forth in this opinion, we vacate the trial court's order and remand for further proceedings.

## I. FACTS AND PROCEEDINGS

The Schmauses are the parents of Amber Schmaus and the grandparents of LM, the child at issue in this case. In 2014, while involved in a romantic relationship with plaintiff Blake Michael Mack, Amber gave birth to LM. Mack executed an affidavit of parentage, and he and Amber never married. In 2017, while Amber was incarcerated, Mack filed this action for custody of LM. The trial court entered a default judgment granting Mack sole legal and sole physical custody. Amber passed away in 2020.

From September 2016 to January 2022, Mack was involved in a romantic relationship with Dezirae Lyons, and Lyons gave birth to two children, GM and AM. Mack, Lyons, and the three children—LM, GM, and AM—lived together until Mack and Lyons ended their relationship in January 2022. Lyons moved out of the home, taking GM and AM with her.

In April 2023, the Schmauses moved for grandparenting time with LM. They alleged that a DNA test revealed that Mack is not LM's biological father and that Lyons performed all of the caretaking responsibilities for LM during Lyons's relationship with Mack. They also alleged that Lyons took LM with her when Lyons left Mack's home in January 2022 and that LM lived with Lyons until March 2022 when LM returned to Mack's home. Thereafter, Mack allowed Lyons visitation with LM until December 2022 when she returned from a trip to the Great Wolf Lodge in Traverse City. The Schmauses paid for the trip as a Christmas gift for the children, but were unable to join the group on the trip. Lyons, LM, GM, and AM went on the trip along with the Schmauses' other granddaughter, MS, and MS's father, Mike Summers. Amber is MS's mother, and MS is LM's older half-sister. After the trip, Mack refused to permit LM to leave the home with Lyons.

Mack allowed the Schmauses to take LM to dinner for her birthday in February 2023. The Schmauses asserted in their motion that LM told them at dinner that she felt kidnapped in Mack's home, that she had to stay in her bedroom all the time, and that she was not allowed to leave the home with Lyons, GM, and AM. She also told the Schmauses that Mack was drunk all the time, that her bedroom lacked adequate heat, and that Mack had told her that the Schmauses did not love her anymore and did not want to see her. The Schmauses alleged that, since LM's birthday dinner, Mack no longer allowed LM to see them or her half-sibling, MS.

Further, the Schmauses asserted that Child Protective Services (CPS) was investigating Mack regarding allegations that he had left LM, GM, and AM alone in the home, that he was intoxicated while the children were in his care, and that he allowed Joshua Bowman, his ex-stepfather, to reside in the home with the children despite Bowman's extensive criminal history. The Schmauses also alleged that Mack's history included domestic violence. Mack pleaded guilty to domestic violence in 2013 and 2015, and the latter incident involved Amber.

Mack opposed the Schmauses' motion. He admitted that he had not permitted LM to leave his home with Lyons following the Great Wolf Lodge trip and that CPS received a complaint about him shortly after the trip. He largely denied the allegations in the complaint and denied that he

had told LM that the Schmauses did not love her and did not want to see her anymore. He asserted that the Schmauses had very limited contact with LM since her birth and had remained at a distance since 2017. He maintained that the Schmauses believe that Summers is LM's biological father and that they want LM to take a DNA test.[2] He asserted that the Schmauses intend to tell LM that he is not her father and that he is concerned about the impact that such information would have on her. He averred that LM was "basically interrogated" during the Great Wolf Lodge trip regarding how similar she and Summers appear. Finally, Mack asserted that the trial court should dismiss the Schmauses' motion because they failed to provide supporting affidavits and failed to rebut the statutory presumption that his decision to deny them grandparenting time did not create a substantial risk of harm to LM's mental, physical, or emotional health.

At a hearing before the referee, the Schmauses requested that their motion be dismissed because they failed to include affidavits with the motion as required under MCL 722.27b(4)(a). Although the Schmauses filed their affidavits after the hearing, the referee recommended that the trial court dismiss the motion for failure to comply with the statute. Before the trial court entered the recommended order, however, the Schmauses filed a second motion for grandparenting time that was identical to their first motion, which they withdrew. They included with their second motion affidavits averring that the allegations stated in the motion were true.

Mack's response to the second motion was largely the same as his first response, but he also noted that the CPS complaint against him had not been substantiated and had been dismissed. In an affidavit accompanying his response, Mack averred that no emotional tie existed between LM and the Schmauses because of their minimal involvement in her life. He also questioned their moral fitness and expressed his belief that they disparaged him during conversations with LM.

The referee held a hearing on the Schmauses' second motion. At the hearing, Mark Schmaus (Mark) denied that he intended to tell LM that Mack is not her father. Mark stated that he "was going to leave that up to him," referring to Mack. Mark maintained that Mack did not have a problem with LM spending time with the Schmauses until Lyons and Summers became romantically involved with each other. Mark asserted that Mack did not like Summers because Amber had been romantically involved with both Mack and Summers and put both men "in a hard position." Mark stated that Mack did not understand "the damage he's doing" by keeping LM away from her half-sister, MS, and refusing to allow LM to play with MS, GM, and AM at the Schmauses' farm where the Schmauses reside. Mark maintained that he considered GM and AM to be his grandchildren and that all the children, except LM, play together at the farm. Finally, Mark stated that Mack needed to "grow up and be a man enough to put his daughter first."

The referee recommended that the trial court deny the second motion. Initially, the referee noted that MCL 722.27b(8) prohibits grandparents from filing more than one motion for grandparenting time every two years absent good cause. The referee "reluctantly" determined that good cause existed on the basis that the Schmauses filed their affidavits after the hearing on their first motion and, instead of objecting to the referee's recommendation regarding the motion, they withdrew the motion and filed their second motion. Substantively, the referee determined that the

---

[2] Shannon Schmaus indicated at a trial court hearing that Summers took a DNA test that established that he is not LM's biological father.

Schmauses failed to rebut the presumption that Mack's denial of grandparenting time did not create a substantial risk of harm to LM's mental, physical, or emotional health.

The Schmauses objected to the referee's recommendation, arguing that they demonstrated by a preponderance of the evidence that Mack's decision to deny them grandparenting time created a substantial risk of harm to LM. They also maintained that, in any event, Mack is not a "fit" parent within the meaning of MCL 722.27b(4)(b) entitled to the presumption that his decision did not create a substantial risk of harm to LM.

At a hearing before the trial court on their objection, the Schmauses argued that MCL 722.27b(4)(a) entitled them to a hearing at which they could present evidence to substantiate their allegations. The trial court determined that the statute did not entitle them to an evidentiary hearing and that they failed to establish "the minimum to even consider getting to a hearing." The court also stated that the Schmauses failed to allege any facts that tended to show that Mack's decision to deny grandparenting time created a substantial risk of harm to LM's mental, physical, or emotional health. This appeal followed.

## II. STANDARDS OF REVIEW

We must affirm on appeal decisions involving grandparenting time "unless the trial court's findings were against the great weight of the evidence, the court committed a palpable abuse of discretion, or the court made a clear legal error on a major issue." *Geering v King*, 320 Mich App 182, 188; 906 NW2d 214 (2017) (quotation marks and citations omitted). A finding contravenes "the great weight of the evidence if the evidence clearly preponderates in the opposite direction." *Pennington v Pennington*, 329 Mich App 562, 570; 944 NW2d 131 (2019). A court commits a palpable abuse of discretion if "its decision is so palpably and grossly violative of fact and logic that it evidences a perversity of will, a defiance of judgment, or the exercise of passion or bias." *Zawilanski v Marshall*, 317 Mich App 43, 48; 894 NW2d 141 (2016) (quotation marks and citation omitted). A clear legal error occurs when a court "incorrectly chooses, interprets, or applies the law." *McIntosh v McIntosh*, 282 Mich App 471, 475; 768 NW2d 325 (2009). Further, we review de novo issues involving statutory interpretation. *Tree City Props LLC v Perkey*, 327 Mich App 244, 247; 933 NW2d 704 (2019).

## III. DISCUSSION

Parents have a fundamental right "to make decisions concerning the care, custody, and control of their children." *Troxel*, 530 US at 66 (opinion by O'CONNOR, J.). Although fundamental, the right "is not absolute, as the state has a legitimate interest in protecting 'the moral, emotional, mental, and physical welfare' " of minor children. *In re Sanders*, 495 Mich 394, 409-410; 852 NW2d 524 (2014), quoting *Stanley v Illinois*, 405 US 645, 652; 92 S Ct 1208; 31 L Ed 2d 551 (1972). But the United States Constitution "recognizes 'a presumption that fit parents act in the best interest of their children' and that 'there will normally be no reason for the State to inject itself into the private realm of the family to further question the ability of fit parents to make the best decisions concerning the rearing of their children.' " *In re Sanders*, 495 Mich at 410, quoting *Troxel*, 530 US at 68-69 (opinion by O'CONNOR, J.) (brackets omitted).

Michigan's grandparenting-time statute, MCL 722.27b, reflects the constitutional presumption that fit parents act in the best interests of their children. This case requires us to interpret the statute to determine whether the Schmauses were entitled to a hearing at which they could present evidence relevant to this presumption and their request for grandparenting time. The goal of statutory interpretation is to determine the Legislature's intent by examining the language of a statute. *Yopek v Brighton Airport Ass'n, Inc*, 343 Mich App 415, 424; 997 NW2d 481 (2022). When statutory language is unambiguous, we enforce the statute as written. *Wayne Co v AFSCME Local 3317*, 325 Mich App 614, 634; 928 NW2d 709 (2018). "We must give effect to every word, phrase, and clause in a statute, avoiding a construction that would render any part of the statute nugatory or surplusage." *Id*. Further, statutory provisions should be read in context rather than in isolation, "and thus statutory provisions are to be read as a whole." *In re Casey Estate*, 306 Mich App 252, 257; 856 NW2d 556 (2014) (quotation marks and citation omitted).

MCL 722.27b provides, in relevant part:

> (3) A grandparent seeking a grandparenting time order shall commence an action for grandparenting time, as follows:
>
> * * *
>
> (4) All of the following apply to an action for grandparenting time under subsection (3):
>
> (a) The complaint or motion for grandparenting time filed under subsection (3) shall be accompanied by an affidavit setting forth facts supporting the requested order. . . . A party having legal custody may file an opposing affidavit. *A hearing shall be held by the court on its own motion or if a party requests a hearing. At the hearing, parties submitting affidavits shall be allowed an opportunity to be heard*.
>
> (b) In order to give deference to the decisions of fit parents, it is presumed in a proceeding under this subsection that a fit parent's decision to deny grandparenting time does not create a substantial risk of harm to the child's mental, physical, or emotional health. To rebut the presumption created in this subdivision, a grandparent filing a complaint or motion under this section must prove by a preponderance of the evidence that the parent's decision to deny grandparenting time creates a substantial risk of harm to the child's mental, physical, or emotional health. If the grandparent does not overcome the presumption, the court shall dismiss the complaint or deny the motion.
>
> * * *
>
> (6) If the court finds that a grandparent has met the standard for rebutting the presumption described in subsection (4), the court shall consider whether it is in the best interests of the child to enter an order for grandparenting time. If the court finds by a preponderance of the evidence that it is in the best interests of the child to enter a grandparenting time order, the court shall enter an order providing for reasonable grandparenting time of the child by the grandparent by general or

specific terms and conditions. In determining the best interests of the child under this subsection, the court shall consider all of the following:

(a) The love, affection, and other emotional ties existing between the grandparent and the child.

(b) The length and quality of the prior relationship between the child and the grandparent, the role performed by the grandparent, and the existing emotional ties of the child to the grandparent.

(c) The grandparent's moral fitness.

(d) The grandparent's mental and physical health.

(e) The child's reasonable preference, if the court considers the child to be of sufficient age to express a preference.

(f) The effect on the child of hostility between the grandparent and the parent of the child.

(g) The willingness of the grandparent, except in the case of abuse or neglect, to encourage a close relationship between the child and the parent or parents of the child.

(h) Any history of physical, emotional, or sexual abuse or neglect of any child by the grandparent.

(i) Whether the parent's decision to deny, or lack of an offer of, grandparenting time is related to the child's well-being or is for some other unrelated reason.

(j) Any other factor relevant to the physical and psychological well-being of the child.

\* \* \*

(12) A court shall make a record of its analysis and findings under subsections (4), (6), (8), and (11), including the reasons for granting or denying a requested grandparenting time order. [Emphasis added.]

Reading the provisions of subsection (4)(a) in context, we conclude that the Schmauses were entitled to a hearing at which they could present evidence to support their claim for grandparent visitation. Subsection (4)(a) contains two provisions that reference a hearing. The first provision states: "A hearing shall be held by the court on its own motion or if a party requests a hearing." That sentence clearly entitles a motioning grandparent to a hearing if a hearing is requested, but it does not indicate whether the grandparent is entitled to testify or present other evidence at the hearing. Rather, the following sentence indicates what is to occur "[a]t the hearing." It states: "At the hearing, parties submitting affidavits shall be allowed an opportunity

to be heard." That sentence clearly allows parties who submitted affidavits an opportunity to testify, at a minimum. Otherwise, the provision would constitute surplusage because the previous sentence already requires a hearing if a party requests one. Therefore, the Legislature must have intended the second sentence to encompass something more than a nonevidentiary hearing at which parties simply present their arguments.

In *Olepa v Olepa*, 151 Mich App 690, 702; 391 NW2d 446 (1986), this Court determined that the phrase "opportunity to be heard" in a previous version of MCL 722.27b included the right of parties to testify, to present affidavits, and to argue their positions. At the time that this Court decided *Olepa*, subsection (3) of the statute contained the two relevant provisions. The two sentences were identical to the current version of the statute except that the first sentence provided that a hearing shall be held on the court's own motion "or if a party so requests" instead of "or if a party requests a hearing." In other words, the difference between the two versions is immaterial. This Court recognized that the statute required the circuit court to hold a hearing at which the grandparent was permitted "an opportunity to be heard." *Id*. at 702. Regarding the meaning of that phrase, the *Olepa* Court stated, "[i]n this context, the 'opportunity to be heard' includes at least the right of parties to testify, to present relevant and material affidavits, and to argue in support of their positions." *Id*.

Although we are not bound to follow *Olepa* because this Court decided the case before November 1, 1990,[3] it is precedential. See *Woodring v Phoenix Ins Co*, 325 Mich App 108, 114; 923 NW2d 607 (2018) (Published decisions issued before November 1, 1990, are "considered to be precedent and entitled to significantly greater deference than are unpublished cases.") We also find *Olepa* persuasive because its holding is consistent with the plain language of the statute. In addition to the language of subsection (4) previously discussed, a hearing at which evidence is presented comports with the trial court's obligation to consider the best-interest factors set forth in subsection (6). That subsection states that if a grandparent rebuts the presumption that a fit parent's denial of grandparenting time does not create a substantial risk to the child's mental, physical, or emotional health, the court must then determine whether it is in the child's best interests to order grandparenting time. Subsection (6) articulates nine factors that a court *shall* consider in making the best-interests determination along with factor (j), a catchall factor, that states "[a]ny other factor relevant to the physical and psychological well-being of the child." It is axiomatic that a court must be presented evidence to enable it to consider the factors set forth in subsection (6). Further, subsection (12) requires the court to make a record of its "analysis and findings." The court must necessarily have been presented evidence in order to make factual findings based on that evidence. Given this fact-finding function, it is reasonable that the Legislature, in providing an "opportunity to be heard" in this context, would contemplate a hearing at which evidence could be presented and developed.

Reviewing the provisions of MCL 722.27b as a whole, we conclude that the trial court erred. The court erroneously determined that the Schmauses were required to rebut the

---

[3] MCR 7.215(J)(1) requires us to follow a published decision of this Court "issued on or after November 1, 1990, that has not been reversed or modified by the Supreme Court, or by a special panel" of this Court.

presumption stated in subsection (4)(b) in order to receive a hearing. The plain language of the statute does not support such an interpretation. Rather, subsection (4)(a) required the court to hold a hearing because the Schmauses requested a hearing. The court also erred by determining that the Schmauses were not entitled to a hearing at which evidence may be presented. MCL 722.27b(4)(a) entitled the Schmauses to "an opportunity to be heard," which necessarily includes in this context, at a minimum, the right to testify as this Court determined in *Olepa*. Because the trial court denied the Schmauses their right to a hearing as contemplated in the statute, we vacate the trial court's order and remand for further proceedings.[4]

Further, the Schmauses argue that the trial court failed to make any finding that Mack is a fit parent entitled to the presumption under subsection (4)(b) that his decision to deny them grandparenting time does not create a substantial risk of harm to LM's mental, physical, or emotional health. The Schmauses are correct. The record shows that the trial court did not make any finding regarding Mack's fitness as it pertains to the presumption under subsection (4)(b). Accordingly, we direct the trial court to address that issue at the hearing on remand, along with any other issues necessary to its determination under MCL 722.27b.

## IV. CONCLUSION

The trial court denied the Schmauses "an opportunity to be heard" within the meaning of MCL 722.27b(4)(a). As such, we vacate the trial court's order denying the Schmauses motion for grandparenting time and remand this case to the trial court for further proceedings consistent with this opinion.

Vacated and remanded. We do not retain jurisdiction.

/s/ Kristina Robinson Garrett
/s/ Thomas C. Cameron
/s/ Philip P. Mariani

---

[4] The Schmauses also argue that they have a procedural due-process right to a "meaningful hearing." Because no life, liberty, or property interest is at stake, however, the Schmauses' due-process argument fails. See *Bauserman v Unemployment Ins Agency*, 503 Mich 169, 186; 931 NW2d 539 (2019) (The Due Process Clause "is violated only if there has been a deprivation of life, liberty, or property."); see also *Brinkley v Brinkley*, 277 Mich App 23, 31; 742 NW2d 629 (2007) (recognizing that "there is no constitutionally protected fundamental right to grandparent visitation").