*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ARTHUR BREITHAUPT, JACOLYN
BREITHAUPT, DAVID K. MACINTOSH,
Individually and as Trustee of the DAVID K.
MACINTOSH TRUST, JANET L. BOETTCHER,
Individually and as Trustee of the JANET L.
BOETTCHER TRUST, MICHAEL R. RADOSA,
Individually and as Trustee of the MICHAEL R.
RADOSA TRUST, SUSAN K. FOURNIER,
Individually and as Trustee of the SUSAN K.
FOURNIER TRUST, GARY MONEY, DIANE
MONEY, TIM COOK, TONYA COOK, and
DAVID STEFFEY,

UNPUBLISHED
March 10, 2020

      Petitioners-Appellants/Cross-
      Appellees,

v

No. 347018
Grand Traverse Circuit Court
LC No. 2017-032396-CK

HOWARD MELAM FAMILY LP, FC REAL
ESTATE RETIREMENT PLAN, RB
CONSTRUCTION DEFINED BENEFIT PLAN,
SANDZ REAL ESTATE COMPANY, INC.
PROFIT SHARING PLAN, VIEW CAPITAL
VENTURES LP, formerly known as CHARCO
VENTURES LP, MS HOLDING LP, formerly
known as SUPERA ASSET MANAGEMENT, INC.
PROFIT SHARING PLAN, COMODORE HOMES,
LLC, ZISOOK ENTERPRISES, HUNTINGTON
NATIONAL BANK, Trustee of the DANIEL M.
WEBSTER TRADITIONAL IRA and the
BARBARA F. WEBSTER TRADITIONAL IRA,
DANIEL M. WEBSTER, and BARBARA F.
WEBSTER,

      Respondents-Appellees,

and

-1-

MICHAEL D. CHARNEY TRUST,

        Respondent,

and

RICHARD C. HERMANN,

        Respondent-Appellee/Cross-
        Appellant.

ARTHUR BREITHAUPT, JACOLYN
BREITHAUPT, DAVID K. MACINTOSH, DAVID
K. MACINTOSH TRUST, JANET L. BOETTCHER
TRUST, JANET L. BOETTCHER, MICHAEL R.
RADOSA TRUST, MICHAEL R. RADOSA,
SUSAN K. FOURNIER TRUST, SUSAN K.
FOURNIER, GARY MONEY, DIANE MONEY,
TIM COOK, TONYA COOK, and DAVID
STEFFEY,

        Plaintiffs-Appellants,

v

COMODORE HOMES, LLC, MS HOLDING LP,
VIEW CAPITAL VENTURES LP, MICHAEL D.
CHARNEY TRUST, SANDZ REAL ESTATE
COMPANY, SANDZ REAL ESTATE COMPANY,
INC., RB CONSTRUCTION DEFINED BENEFIT,
HOWARD MELAM FAMILY LP, FC REAL
ESTATE RETIREMENT PLAN, ZISOOK
ENTERPRISES LP, HUNTINGTON NATIONAL
BANK, as Trustee of the BARBARA F. WEBSTER
TRADITIONAL IRA and the DANIEL WEBSTER
TRADITIONAL IRA, BARBARA WEBSTER,
DANIEL WEBSTER, and RICHARD C.
HERMANN,

        Defendants-Appellees.

No.   348441
Grand Traverse Circuit Court
LC No.   2018-034575-CK

Before:  BOONSTRA, P.J., and RIORDAN and REDFORD, JJ.

PER CURIAM.

-2-

These consolidated appeals[1] arise from two related cases brought by plaintiffs, members of the Tamarack Development Associates, LLC (TDA), regarding defendants' alleged breach of TDA's operating agreement, unfair and oppressive conduct, and tortious interference with contract relations. In Lower Court No. 347018 (the 2017 Case), plaintiffs appeal by right the circuit court's final order entered on December 6, 2018 (December 2018 Order) that granted summary disposition under MCR 2.116(C)(8) and (10) for defendant Huntington National Bank as Trustee for the Daniel M. Webster Traditional IRA and Huntington National Bank as Trustee for the Barbara F. Webster Traditional IRA (HNB as Trustee for the Webster IRAs) on the ground that Huntington National Bank (HNB), the trustee for the Webster IRAs was not a member of TDA or a party to the arbitration agreement featured in TDA's Amended and Restated Operating Agreement. Plaintiffs also appeal the circuit court's June 21, 2018 order (June 2018 Order) that granted partial summary disposition under MCR 2.116(C)(8) and (10) for defendant Richard C. Hermann dismissing plaintiffs' breach of contract and tortious interference claims against him. Additionally, plaintiffs appeal the circuit court's July 31, 2018 order (July 2018 Order) that dismissed defendants Howard Melam Family LP, FC Real Estate Retirement Plan, RB Construction Defined Benefit Plan, Sandz Real Estate Company Inc. Profit Sharing Plan, View Capital Ventures LP, MS Holding LP, Comodore Homes LLC, and Zisook Enterprises LP (the Chicago Group), Herman, defendants Daniel M. Webster and Barbara F. Webster (the Websters) under MCR 2.116(C)(3) for lack of jurisdiction because of plaintiffs' failure to properly serve these defendants before the expiration of the summons. Hermann cross-appeals the circuit court's June 2018 Order denying him partial summary disposition of plaintiffs' unfair and oppressive conduct claim against him and ordering him to arbitration.

In Lower Court No. 348441 (the 2018 Case), plaintiffs appeal by right the circuit court's December 2018 Order (the same order entered in the 2017 Case) that granted summary disposition under MCR 2.116(C)(8) and (10) in favor of HNB as Trustee for the Webster IRAs and the circuit court's March 25, 2019 order (March 2019 Order) in which the circuit court denied plaintiffs' motion to compel the Chicago Group to arbitrate. Plaintiffs moved in this Court for peremptory reversal on the ground that the circuit court failed to stay the lower court proceedings and order the parties to arbitration, and this Court denied plaintiffs' motion because plaintiffs failed to persuade the Court that manifest error occurred requiring reversal and warranting peremptory relief without argument or formal submission. *Breithaupt v Howard Melam Family LP*, unpublished order of the Court of Appeals, entered August 14, 2109 (Docket Nos. 347018; 348441).

For the reasons stated in this opinion, we affirm in part, reverse in part, and remand for further proceedings consistent with this opinion. Specifically:

(1) as it relates to Hermann, we reverse the circuit court's dismissal under MCR 2.116(C)(3) of plaintiffs' unfair and oppressive conduct claim against Hermann in the 2017 Case, reverse the circuit court's grant of summary disposition

---

[1] This Court ordered the consolidation of the parties' appeals in the two cases to advance the efficient administration of the appellate process. *Breithaupt v Howard Melam Family LP*, unpublished order of the Court of Appeals, entered May 20, 2109 (Docket Nos. 347018; 348441).

under MCR 2.116(C)(8) and (10) in favor of Hermann in the 2017 Case on plaintiffs' breach of contract and tortious interference with contract relations claims, and remand the 2017 Case to the circuit court with instructions to refer plaintiffs' claims against Hermann to arbitration and stay further proceedings in the 2017 Case until the completion of arbitration;

(2) as it relates to HNB as Trustee for the Webster IRAs, the Websters, and the Chicago Group, we affirm the circuit court's dismissal of plaintiffs' claims against HNB as Trustee for the Webster IRAs, the Websters, and the Chicago Group in the 2017 Case under MCR 2.116(C)(3) for defective service; and

(3) as it relates to HNB as Trustee for the Webster IRAs and the Webster IRAs, we reverse the circuit court's grant of summary disposition under MCR 2.116(C)(8) and (10) in favor of HNB as Trustee for the Webster IRAs in the 2018 Case and remand for further development of the record and an evidentiary hearing at the conclusion of which the circuit court shall decide the threshold issue whether either the Webster IRAs or HNB as Trustee for the Webster IRAs were a party to TDA's Amended and Restated Operating Agreement and subject to the agreement to arbitrate, and then conduct further proceedings consistent with this opinion.

## I. BACKGROUND

During 2003, Hermann formed TDA, a Michigan limited liability company. As its sole member and president, on June 1, 2005, Hermann amended and restated TDA's operating agreement to enable TDA to admit additional investor members to contribute capital for a condominium project development by TDA, known as Tamarack Lodge, a fractional timeshare condominium to be constructed in Traverse City, Michigan.[2] TDA's Amended and Restated Operating Agreement provided for the addition of Class A members as accredited investors for the purchase of membership units for $50,000 each. TDA's Amended and Restated Operating Agreement provided that Class A members alone would receive a "Priority Income Return" which the agreement defined as an uncompounded 25% annual yield on the net amount of Class A members' respective net invested capital contributions to TDA. Hermann held the sole Class B membership interest of 100 units. TDA's Amended and Restated Operating Agreement provided for only Class A members and the single Class B member. Additional Class A members could be admitted in accordance with the agreement or with the prior consent of the members. Hermann could purchase additional Class B units or sell such units to third parties as he deemed appropriate. TDA's Amended and Restated Operating Agreement provided that Hermann agreed to guarantee to each Class A member's priority income return and priority return of capital within 36 months from the date of investment.

---

[2] The record reflects that TDA constructed the condominium project and sold timeshares in numerous units.

-4-

Hermann's Personal Guaranty Agreement provided in relevant part:

> Guarantor hereby irrevocably and unconditionally guarantees to the Owners and their permitted successors and assigns the full and prompt payment and performance when due of the Priority Returns within 36 months of the date herein. This Guaranty of the Priority Returns shall be enforceable against the Guarantor regardless of whether such Priority Returns are held to be unenforceable, void or of no effect against Tamarack. In addition to the Priority Returns, this Guaranty covers all costs, expenses and fees, including reasonable attorney fees, arising in connection with the collection or enforcement of any or all amounts due from Tamarack to the Owners with respect to the Priority Returns. Guarantor acknowledges and agrees that this Guaranty may be enforced by the Owners of a majority of the Class A Units ("Majority Owners"). [See *Cook v Hermann*, unpublished per curiam opinion of the Court of Appeals, issued Nov 21, 2017 (Docket No. 335989), pp 2-3.[3]]

Hermann submitted to the trial court a TDA business record dated September 15, 2010, and represented in his summary disposition brief in the 2017 Case, that TDA's Class A member investors consisted of the following: Tim and Tonya Cook; Janet L. Boettcher Trust; Arthur and Jacolyn Breithaupt; David Steffey; Susan Fournier; Michael Radosa; Mokam Excavating; Bryan Punturo; Harlan Bolt; Daniel and Barbara Webster; David K MacIntosh Trust; Howard Melam Family LP; Michael D. Charney Trust; RB Construction Defined Benefit Plan; Supera Asset Management; Sandz Real Estate Co. Inc. Employee Profit Sharing; FC Real Estate Retirement Plan; Huntington National Bank, Trustee D. M. Webster Trad. IRA; Huntington National Bank, Trustee B. Webster Trad. IRA; Huntington National Bank, Trustee D. Webster Beneficiary IRA; Gary and Diane Money; and Jonathon and Shannon Money.[4] The document specified that these Class A members contributed a total Class A member capital contribution of $2,075,000.

Under TDA's Amended and Restated Operating Agreement, each Class A and Class B unit had one vote on matters submitted to a vote. The agreement restricted TDA from engaging in or undertaking certain specified activities without the approval of its Class A members voting as a class, including but not limited to, selling real property, encumbering TDA's assets, permitting TDA to become bankrupt or to commence liquidation, or admit any person as a Class A member

---

[3] Hermann's guaranty is not a part of the lower court record in either case on appeal. This excerpt of his guaranty is found in this Court's previous opinion issued in a separate case brought by Class A members of TDA, the Cooks and Steffey, whose dispute with TDA and Hermann was submitted to arbitration and resulted in a judgment. This Court may take judicial notice of the facts contained in this Court's opinion in the previous appeal, because such facts can no longer be disputed and are "capable of accurate and ready determination by resort to" a copy of the opinion, "whose accuracy cannot reasonably be questioned." MRE 201(b). Judicial notice can take place at any stage of the proceeding, MRE 201(e), including for the first time on appeal. *People v Burt*, 89 Mich App 293, 297; 279 NW2d 299 (1979) (noting that appellate courts "can even take judicial notice on their own initiative of facts not noticed below").

[4] In the 2017 Case, plaintiffs submitted to the circuit court and relied in part on similar documents.

except as permitted under the agreement. Further, at meetings of the members, to take action, TDA's Amended and Restated Operating Agreement required a majority vote of all members unless otherwise specified.

In the event of disputes arising in relation to TDA's Amended and Restated Operating Agreement, § 10.05 provided:

> The parties hereto agree that any and all legal disputes, controversies or claims arising out of or relating to the interpretation or enforcement of this Agreement or any breach or termination of any thereof (a "Dispute") shall be resolved by agreement among all parties to the relevant Dispute, or if notice is given by any such party as provided below and the matter is not settled within 30 days thereafter, by Arbitration.

TDA's Amended and Restated Operating Agreement defined "arbitration" as follows:

> "Arbitration" means a proceeding subject to the Michigan Arbitration Act, MCL 600.5001 et seq. and MCR 3.602, which shall be conducted in Traverse City, Michigan by a single arbitrator, whose costs shall be shared equally by the parties and on whose award judgment may be entered in any state or federal court having jurisdiction over the parties.

Around 2008, TDA suffered financial difficulties that affected its ability to service its construction loan with its primary lender, National City Bank. Apparently, in an effort to secure additional funding, Hermann twice amended TDA's Amended and Restated Operating Agreement, once in 2009 to add Class AA members, and again in 2010 to add Class AAA members. Under the purported amendments, Class AA and Class AAA members were granted priority return on their investments superior to Class A members. Additionally, each amendment diluted Class A member voting percentages by the addition of additional members with voting rights.

In October 2014, when Class A members had still not received any of the promised "priority returns" on their investments, Class A members Tim Cook, Tonya Cook, and David Steffey, filed suit, in part, for breach of the TDA's Amended and Restated Operating Agreement and Hermann's breach of the Personal Guaranty Agreement. See *Cook*, unpub op at p 3. The circuit court dismissed the plaintiffs' complaint and remanded the matter to arbitration where the arbitrator determined that the plaintiffs were entitled to judgment as a matter of law for TDA's breach of TDA's Amended and Restated Operating Agreement and Hermann's breach of the Personal Guaranty Agreement, and issued an award of $1,002,543.70. *Id*. The circuit court affirmed the arbitrator's award as against TDA and entered judgment against it but vacated the portion of the award against Hermann. This Court reversed the circuit court's refusal to enforce the arbitrator's award against Hermann for his breach of the guaranty and remanded for entry of judgment in the plaintiffs' favor. *Id*. at 5.

In December 2016, after the arbitrator issued its award and the circuit court entered judgment against TDA, Comodore Homes, LLC (an entity owned by Jean Hermann), FC Real Estate Retirement Plan, and Howard Melam Family LP filed an involuntary chapter 11 bankruptcy petition against TDA. See *In re Tamarack Development Associates*, LLC, ___ BR ___, slip op 2

and n 5 (2020). In October 2017, the Cooks and Steffey, judgment creditors in TDA's bankruptcy proceeding, consented to the bankruptcy court's conversion of TDA's bankruptcy to a chapter 7 liquidation bankruptcy. *Id*. at 3. During the bankruptcy proceeding, Hermann provided a deposition at which he testified about action taken by Class A members to vote on the enforcement of his personal guaranty. The Chicago Group intended to vote against enforcement of his personal guaranty and Daniel Webster constituted the swing voter. Hermann affirmed his understanding that Daniel Webster held 19% of the Class A members' voting rights at the time of that vote.

In December 2017, plaintiffs filed the 2017 Case in which they demanded arbitration conducted by the same arbitrator who presided over the earlier arbitration between the Cooks, Steffey, TDA, and Hermann. In lieu of answering, HNB as Trustee for the Webster IRAs moved for summary disposition under MCR 2.116(C)(3) for plaintiffs' failure of service of process, (C)(8) for their failure to state a claim, and (C)(10) on the ground that plaintiffs failed to present a signed document that indicated that the Webster IRAs were signatories to TDA's Amended and Restated Operating Agreement, and therefore, the IRAs could not be compelled to arbitrate. HNB as Trustee for the Webster IRAs submitted to the circuit court a set of documents it represented to the circuit court pertained to loans made by the Webster IRAs to TDA. One of them, titled "Subordinate Mortgage Note," executed by Hermann as TDA's manager, stated the amount of $250,000 and that it was secured by subordinate mortgages granted by TDA and a limited partnership on real property.[5] A document entitled "Exhibit A Attached to documents regarding

---

[5] Defendant Daniel Webster submitted to the circuit court an affidavit in the 2018 Case with an assortment of attached exhibits including Exhibits D1-D8 which feature the first page only of documents each entitled "Subordinate Mortgage Note" all dated October 12, 2005, which in turn identified "Huntington National Bank, Trustee-See Exhibit A", David K. MacIntosh Trust, Howard Melam Family LP, Charco Ventures LP, RB Construction Defined Benefit Plan, Supera Asset Management, Sandz Real Estate Co Inc Employee Profit Sharing, and FC Real Estate Retirement Plan as the promisees under the respective notes. In the arbitration proceeding, however, Daniel Webster provided a sworn affidavit on behalf of the Daniel M. Webster IRA in which he attested that he was the signatory on that IRA and that it was a Class A member of TDA that owned two Class A units with 4.8% of TDA's Class A voting rights and that the IRA consented to any Class A member's enforcement of Hermann's guaranty. Daniel Webster also provided a sworn affidavit on behalf of the Esther A. Webster (Deceased) IRA in which he attested that he was the signatory on that IRA and that it was a Class A member of TDA that owned 2.2 Class A units with 5.3% of TDA's Class A voting rights and that the IRA consented to any Class A member's enforcement of Hermann's Guaranty. Barbara Webster similarly provided a sworn affidavit on behalf of the Barbara F. Webster IRA in which she attested that she was the signatory on that IRA and that it was a Class A member of TDA that owned .8 of a Class A unit with 1.93% of TDA's Class A voting rights and that the IRA consented to any Class A member's enforcement of Hermann's guaranty.

The Websters, however, also submitted as an exhibit to their summary disposition motion in the 2018 Case a copy of a document entitled "Subordinate Mortgage" recorded in the Grand Traverse County Register of Deeds on October 21, 2016, granted by TDA to Frederick Bimber as Indenture Trustee for promissory note holders listed on an attached exhibit. That exhibit identified

purchase of Tamarack Development Associates, LLC Dated October 12, 2005," executed by Hermann and HNB's Trust Officer, Brenda M. Miller, as the HNB Trustee, accompanied the note and itemized the value of three unidentified assets that the document stated would be owned respectively by each of the Webster IRAs. HNB as Trustee for the Webster IRAs also submitted to the circuit court a document entitled "Subordinate Mortgage" which identified "Tamarack Property" as the property securing the payment and performance of TDA under the terms of unspecified promissory notes. HNB as Trustee for the Webster IRAs also submitted to the circuit court a document entitled "Loan Agreement" dated October 12, 2005, between TDA and " 'Subordinate Note Holders' or 'Note Holders' ". The proceeds of the loan were to be used for payment of seller financing and development costs of two phases of TDA's Tamarack Lodge project. Section 9.2 of the Loan Agreement provided:

> Whenever reference is made to any action to be taken by a Note Holder or Note Holders, it shall be taken by the Majority Holders. "Majority Holders" means the holders of a majority of the aggregate principal amount of the Subordinate Notes and the Class A Members' capital contributions.

The loan agreement provided for simple 25% interest per annum and payments from net sale proceeds from the sale of fractionalized interests in the condominiums to:

> the Subordinated note Holders will be made pro rata with distributions to the Class A Members of [TDA]. In the event of foreclosure of the mortgage, any net proceeds upon foreclosure will be shared pro rata with the Class A Members of [TDA].

The loan agreement also provided that Hermann guaranteed the loans made by note holders pursuant to his unlimited personal guaranty. Hermann executed the loan agreement document as TDA's president and HNB executed it as "Huntington National Bank as Trustee" with reference to an "Exhibit A" and specifying the amount of $250,000. The loan agreement document identified "Huntington National Bank as Trustee" as the "Note Holders" and referenced an accompanying exhibit A, the same exhibit that accompanied the note which referenced each of the Webster IRAs and itemized that each would respectively own one of three unspecified assets for the stated values.

Hermann later similarly moved for summary disposition in lieu of answering under MCR 2.116(C)(4) for lack of subject-matter jurisdiction on the ground that plaintiffs' breach of contract and tortious interference claims were property of TDA's bankruptcy estate, and under MCR

---

David K. MacIntosh Trust, Howard Melam Family LP, Charco Ventures LP, RB Construction Defined Benefit Plan, Supera Asset Management, Sandz Real Estate Co Inc Employee Profit Sharing, and FC Real Estate Retirement Plan, Janet Boettcher Trust, and Comodore Homes LLC, as promissory note holders, but also segregated these entities into Class A, Class AA, and Class AAA categories. TDA's bankruptcy trustee objected to this mortgage as a preference, and upon stipulation by the trustee and Bimber, the bankruptcy court entered a consent judgment that ordered that TDA's bankruptcy trustee avoided that mortgage pursuant to 11 USC 547(b) and TDA's bankruptcy estate held all of the rights and powers granted by the mortgage.

2.116(C)(7) on the ground that plaintiffs' shareholder oppression claim was time-barred. Hermann also sought dismissal under MCR 2.116(C)(8) on the ground that plaintiffs failed to state a claim.

Plaintiffs opposed both HNB as Trustee for the Webster IRAs' and Hermann's motions and separately moved to compel arbitration and stay the proceedings pending arbitration. Respecting HNB as Trustee for the Webster IRAs' motion, plaintiffs contended that the Webster IRAs were Class A members of TDA that exercised voting rights. Plaintiffs relied on TDA business documents in support of that assertion. Respecting Hermann's motion, plaintiffs argued that their claims against him were not property of TDA's bankruptcy estate but were leveled against Hermann personally and that the statute of limitations did not bar their claims related to Hermann's unfair and oppressive conduct to prioritize others' interests over theirs. Plaintiffs argued that defendants, including Hermann, engaged in a continuing course of conduct to interfere with their rights as TDA Class A members. On May 14, 2018, the circuit court conducted a hearing at which it determined that HNB as Trustee of the Webster IRAs was not entitled to summary disposition under MCR 2.116(C)(3) because plaintiffs' efforts sufficed for service of process as to it. The circuit court, however, held in abeyance its decision on the MCR 2.116(C)(8) and (10) motions, as well as plaintiffs' motion to compel arbitration, finding that Hermann's motion raised an issue whether the court had jurisdiction to address the dispute.

The circuit court resumed the proceedings on June 11, 2018. It considered plaintiffs' breach of contract claim as a derivative claim that must be brought by TDA, and therefore, the bankruptcy estate owned the claim which could only be asserted by the bankruptcy trustee. Consequently, the circuit court dismissed the claim under MCR 2.116(C)(8). Respecting plaintiffs' tortious interference claim, the circuit court held that plaintiffs failed to present sufficient proof of a conspiracy by defendants and granted summary disposition under MCR 2.116(C)(10). Respecting plaintiffs' unfair and oppressive conduct claim, the circuit court found that plaintiffs' cause of action accrued on November 9, 2015 and they sued on December 13, 2017, within the three-year statutory limitations period. The circuit court denied Hermann summary disposition of that claim and stated that the matter should proceed to arbitration.

Meanwhile, plaintiffs obtained the entry of defaults and default judgments against some defendants including the Websters who moved to set aside the default judgment against them on the ground that plaintiffs failed to properly serve them the summons and complaint as required under the court rules. The Chicago Group joined on the same grounds asserted by the Websters. In a written decision and order, the circuit court held that plaintiffs failed to properly effectuate service of copies of the summons and complaint upon the Websters and Hermann before the expiration of the summons which deprived the court of personal jurisdiction over them requiring dismissal of the claims against them.

On August 29, 2018, about a month after the court dismissed the Websters, Hermann, and the Chicago Group from the 2017 Case, plaintiffs filed the 2018 Case, which asserted a single count of willfully unfair and oppressive conduct against defendants.[6] Plaintiffs also moved to consolidate the 2017 Case with the 2018 Case. HNB as Trustee for the Webster IRAs moved for

---

[6] Plaintiffs sued the same defendants as in the 2017 Case with the exception that they added as a party the Esther Alma Webster, deceased, Daniel Webster Beneficiary IRA.

summary disposition under 2.116(C)(8) and (10) on essentially the same grounds raised in the 2017 Case. The Websters moved to strike the complaint on the ground that plaintiffs failed to allege sufficient facts from which they could determine what claims were asserted against them. The Chicago Group answered and denied that they were subject to the arbitration provision.

In a hearing held on November 26, 2018, the circuit court considered HNB as Trustee for the Webster IRAs' motions for summary disposition filed in the 2017 Case and in the 2018 Case. The circuit court ruled that plaintiffs failed to present any evidence that the Webster IRAs had signed the TDA Amended and Restated Operating Agreement, and therefore, the IRAs were not bound by its terms including the arbitration provision. The circuit court rejected plaintiffs' evidence–the Websters' respective sworn affidavits as signatories for the Webster IRAs in which they averred that the IRAs were Class A members of TDA with voting rights–as insufficient to establish that HNB as Trustee for the Webster IRAs had any obligation to arbitrate the dispute. The circuit court opined that the documents showing that the IRAs had cast votes as Class A members were not binding on HNB as Trustee for the Webster IRAs because they did not establish that HNB as Trustee for the Webster IRAs assented to the operating agreement. The circuit court granted HNB as Trustee for the Webster IRAs summary disposition under MCR 2.116(C)(8) and (10) in both the 2017 Case and the 2018 Case and dismissed the IRAs from both suits.

The circuit court granted the Websters' motion to strike, which the court considered as a motion for a more definite statement under MCR 2.108(C)(4), and ordered plaintiffs to amend their complaint. The circuit court held in abeyance its decision on plaintiffs' motion to compel arbitration. Plaintiffs amended their complaint and the Chicago Group and Hermann answered. The Websters moved for summary disposition under MCR 2.116(C)(8) and (10). Hermann moved for partial summary disposition under MCR 2.116(C)(4), (7), and (8) on the grounds that plaintiffs' claims were the property of TDA's bankruptcy estate and that the circuit court lacked jurisdiction over such claims. Hermann argued that the single claim in the 2018 Case in essence asserted a breach of the operating agreement and otherwise lacked sufficient specificity to survive summary disposition. Hermann also opposed plaintiffs' motion to compel arbitration on the grounds that TDA's Amended and Restated Operating Agreement did not provide for arbitration of the issues raised by plaintiffs because the dispute did not arise from the interpretation or enforcement of the operating agreement. Hermann further argued that plaintiffs could only bring their claims in the bankruptcy court.

In February 2019, the circuit court considered plaintiffs' motion to compel arbitration and for a stay. At the hearing, the Chicago Group persuaded the court that they should not be compelled to arbitrate because they were not parties to TDA's Amended and Restated Operating Agreement. The circuit court, however, found that the Websters and Hermann were parties to the agreement and granted plaintiffs' motion and ordered the Websters and Hermann to arbitration through the American Arbitration Association. The circuit court ordered that the issues raised in the Websters' motions for summary disposition were not decided because its arbitration decision subsumed the motions.

As a preliminary matter, the Websters and HNB as Trustee for the Webster IRAs assert that this Court lacks jurisdiction because the circuit court did not enter a final order that would permit an appeal of right. We disagree. MCL 691.1708(1)(a) provides that an appeal may be taken from an "order denying a motion to compel arbitration." Further, MCR 3.602(N) provides

-10-

that "[a]ppeals may be taken as from orders or judgments in other civil actions[.]" The circuit court denied plaintiffs' motion to compel arbitration respecting several defendants in the 2018 Case. The circuit court also granted summary disposition for HNB as Trustee for the Webster IRAs of plaintiffs' claims and entered a final order closing the 2017 Case. Accordingly, we may exercise jurisdiction over the appeals in these cases. Further, to the extent that aspects of plaintiffs' appeals may not be raised as of right and should have been filed as an application for leave to appeal, we will treat the appeal as an application for leave, grant leave, and address the substantive issues. See *In re Ballard*, 323 Mich App 233, 235 n 1; 916 NW2d 841 (2018).

## II. STANDARDS OF REVIEW

We review de novo a trial court's decision on a motion for summary disposition. *Lowrey v LMPS & LMPJ, Inc*, 500 Mich 1, 5-6; 890 NW2d 344 (2016). Summary disposition based on MCR 2.116(C)(3) is appropriate when the service of process is insufficient. We review de novo the proper interpretation and application of Michigan's court rules. *Johnson Family Ltd Partnership v White Pine Wireless, LLC*, 281 Mich App 364, 387; 761 NW2d 353 (2008). Similarly, we review de novo questions of constitutional law, such as whether the method used to serve a defendant met the minimum requirements of due process. *In re Rood*, 483 Mich 73, 91; 763 NW2d 587 (2009). We review de novo subject-matter jurisdictional questions raised under MCR 2.116(C)(4). *Meisner Law Grp PC v Weston Downs Condo Ass'n*, 321 Mich App 702, 714; 909 NW2d 890 (2017). We review de novo issues of statutory construction. *Id*. "[W]hen reviewing a motion for summary disposition brought under MCR 2.116(C)(4) that asserts the court lacks subject-matter jurisdiction, the court must determine whether the pleadings demonstrate that the defendant is entitled to judgment as a matter of law, or whether the affidavits and other proofs [(if submitted)] show that there was no genuine issue of material fact." *Id*. (citations omitted).

We review de novo whether a circuit court properly dismissed an action or claims under MCR 2.116(C)(7) on the ground that a claim is time-barred by a statute of limitations. *Collins v Comerica Ban*k, 468 Mich 628, 631; 664 NW2d 713 (2003). This Court considers the pleadings, affidavits, depositions, and other documentary evidence in a light most favorable to the nonmoving party, accepting the allegations of the complaint as true unless contradicted by the documentary evidence. *RDM Holdings, Ltd v Continental Plastics Co*, 281 Mich App 678, 687; 762 NW2d 529 (2008) (citations omitted). Summary disposition is not appropriate if a factual dispute exists. *Id*.

Regarding motions under MCR 2.116(C)(8), these principles apply:

> A motion for summary disposition under MCR 2.116(C)(8) tests the legal sufficiency of the complaint. All well-pleaded factual allegations are accepted as true and construed in a light most favorable to the nonmovant. A motion under MCR 2.116(C)(8) may be granted only when the claims alleged are so clearly unenforceable as a matter of law that no factual development could possibly justify recovery. [*Johnson v Pastoriza*, 491 Mich 417, 434-435; 818 NW2d 279 (2012) (quotation marks and citations omitted).]

A motion under MCR 2.116(C)(10) tests the factual sufficiency of the complaint. *Bienenstock & Assocs v Lowry, Inc*, 314 Mich App 508, 514, 887 NW2d 237 (2016) (quotation marks and citation omitted). For deciding summary disposition motions under MCR 2.116(C)(10),

-11-

circuit courts must consider affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties in the light most favorable to the party opposing the motion. *Id*. "Summary disposition is proper where there is no genuine issue regarding any material fact." *Id*. (quotation marks and citation omitted). A genuine issue of material fact exists when "reasonable minds could differ on an issue after viewing the record in the light most favorable to the nonmoving party." *Allison v AEW Capital Mgt, LLP*, 481 Mich 419, 425; 751 NW2d 8 (2008). We consider only the evidence that was properly presented to the trial court in deciding the motion. *Peña v Ingham Co Rd Comm*, 255 Mich App 299, 310; 660 NW2d 351 (2003).

"Whether an arbitration agreement exists and is enforceable is a legal question that we review de novo." *Lebenbom v UBS Fin Servs, Inc*, 326 Mich App 200, 208; 926 NW2d 865 (2018). "Questions regarding the interpretation of contractual language are reviewed de novo." *Id*. (citation omitted). We review de novo whether a court possessed personal jurisdiction over a party. *Yoost v Caspari*, 295 Mich App 209, 219; 813 NW2d 783 (2012).

## III. ANALYSIS

Plaintiffs argue in their appeals of the circuit court's decisions in both the 2017 Case and the 2018 Case that the circuit court erred by ruling on motions for summary disposition under MCR 2.116(C)(8) and (10) before determining whether the issues were arbitrable and that it should have stayed proceedings and not ruled on such motions after plaintiffs moved to compel arbitration. Plaintiffs also argue that the circuit court erred by dismissing claims against Hermann under MCR 2.116(C)(3) because Hermann failed to raise the defense in his first responsive pleading.

In the 2017 Case, Hermann moved for summary disposition under MCR 2.116(C)(4), (7), and (8) on the grounds that plaintiffs' breach of contract and tortious interference with contract relations claims were property of TDA's bankruptcy estate, that plaintiffs failed to state a claim for unfair and oppressive conduct, and that that claim was time-barred. Hermann filed his motion after plaintiffs moved to compel arbitration. The circuit court granted in part Hermann's motion under MCR 2.116(C)(8) and (10), and dismissed plaintiffs' breach of contract and tortious interference with contract relations claims. Later, the circuit court dismissed the remaining claim against Hermann and the claims against the Websters, on the ground that plaintiffs' defective service of process deprived it of jurisdiction.

In *Bienenstock*, 314 Mich App at 515 (quotation marks, citations and alteration omitted), this Court explained:

> Arbitration is simply a matter of contract between parties; it is a way to resolve those disputes—but only those disputes—that the parties have agreed to submit to arbitration. In other words, arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit. In this endeavor, as with any other contract, the parties' intentions control.

"[A] party cannot be forced to submit to arbitration in the absence of an agreement to do so." *Ehresman v Bultynck & Co, PC*, 203 Mich App 350, 353-354; 511 NW2d 724 (1994) (citation

omitted). The existence of a contract to arbitrate and its enforceability are questions to be decided by the court. *Id*. at 354. If the party seeking to enforce the arbitration agreement establishes that the party against whom enforcement is sought mutually assented to the arbitration agreement, a signed arbitration agreement is not necessary for the agreement to be binding. *Id*. In *Ehresman*, this Court approved the following principles set forth in 17 CJS, Contracts, § 62, pp 731-733:

> [S]ignature is not always essential to the binding force of an agreement, and whether a writing constitutes a binding contract even though it is not signed or whether the signing of the instrument is a condition precedent to its becoming a binding contract usually depends on the intentions of the parties. The object of a signature is to show mutuality or assent, but these facts may be shown in other ways. . . .

> In the absence of a statute or arbitrary rule to the contrary, an agreement need not be signed, provided it is accepted and acted on, or is delivered and acted on. [*Ehresman*, 203 Mich App at 354 (alteration and ellipsis in original).]

In *Ehresman*, this Court considered the circumstances of the plaintiff's conduct and concluded that he clearly conveyed his assent to the written contract and acceded to the terms of the agreement by his conduct which bound him to arbitrate the parties' dispute. *Id*. at 354-355.

To determine whether parties agreed to arbitrate a certain matter, courts should "apply basic state-law principles that govern the formation of contracts." *Lebenbom*, 326 Mich App at 209 (citation omitted). "Moreover, when deciphering whether plaintiff's claims are covered by the parties' arbitration clause, this Court is not permitted to analyze 'the substantive merits' of plaintiff's claims. Rather, if the dispute is subject to arbitration, the merits of the dispute are left to the arbitrator to decide." *Id*. at 211 (citation omitted). If a plaintiff's claims fall within the arbitration clause, a circuit court must resolve any doubts in favor of arbitration and should grant the motion to compel arbitration. *Id*. The party seeking to avoid the arbitration agreement bears the burden of establishing that the disputed matter is not subject to arbitration. *Altobelli v Hartmann*, 499 Mich 284, 295; 884 NW2d 537 (2016).

The TDA Amended and Restated Operating Agreement provided for statutory arbitration, and therefore, the Michigan uniform arbitration act (UAA), MCL 691.1681 *et seq*., applied. See *Fette v Peters Constr Co*, 310 Mich App 535, 541; 871 NW2d 877 (2015) (noting that when an arbitration agreement provides that judgment may be entered on the arbitration award, it falls within the definition of statutory arbitration). Under MCL 691.1686(3), "An arbitrator shall decide whether a condition precedent to arbitrability has been fulfilled and whether a contract containing a valid agreement to arbitrate is enforceable." Under MCL 691.1686(2), the circuit court "shall decide whether an agreement to arbitrate exists or a controversy is subject to an agreement to arbitrate." See *Watts v Polaczyk*, 242 Mich App 600, 603; 619 NW2d 714 (2000) ("The existence of an arbitration agreement and the enforceability of its terms are judicial questions for the court rather than for the arbitrators."). Therefore, under the UAA, a circuit court has authority to determine the existence of an arbitration agreement and order the parties to arbitration. A circuit court's authority to make any determination under the UAA, however, arises only when the court "has jurisdiction over the controversy and the parties." MCL 691.1706; see also *Lease Acceptance*

*Corp v Adams*, 272 Mich App 209, 219-220; 724 NW2d 724 (2006).  Consequently, jurisdiction is a threshold issue that a circuit court must consider before it may turn to the issue of arbitrability.

Subject-matter jurisdiction concerns the right of an adjudicative body to "exercise judicial power over [a] class of cases; not the particular case before it, but rather the abstract power to try a case of the kind or character of the one pending; and not whether the particular case is one that presents a cause of action[.]" *Winkler v Marist Fathers of Detroit, Inc*, 500 Mich 327, 333; 901 NW2d 566 (2017) (quotation marks and citation omitted). The question of subject-matter jurisdiction is not dependent on the truth or falsity of the allegations, but upon their nature. *Wayne Co v AFSCME Local 3317*, 325 Mich App 614, 635; 928 NW2d 709 (2018). The inquiry into subject-matter jurisdiction is determinable at the commencement of a case, not its conclusion. *Id*. There is a vast difference between want of jurisdiction, in which case a court has no power whatsoever to adjudicate the matter, and an error in the exercise of undoubted jurisdiction, in which case the court's action is not void, even though it may be subject to direct attack on appeal. *Id*. "Circuit courts have original jurisdiction to hear and determine all civil claims and remedies, except where exclusive jurisdiction is given in the constitution or by statute to some other court or where the circuit courts are denied jurisdiction by the constitution or statutes of this state." MCL 600.605; see also Const 1963, art 6, § 13 ("The circuit court shall have original jurisdiction in all matters not prohibited by law[.]").

"Before a court may obligate a party to comply with its orders, the court must have in personam jurisdiction over the party." *Oberlies v Searchmont Resort, Inc*, 246 Mich App 424, 427; 633 NW2d 408 (2001).  A court usually obtains personal jurisdiction over a defendant "by service of process." *Isack v Isack*, 274 Mich App 259, 266; 733 NW2d 85 (2007).  "[S]ervice of the summons is a necessary part of service of process," and if the plaintiff completely fails to ensure service of the summons, the court does not obtain personal jurisdiction over the defendant. *Holliday v Townley*, 189 Mich App 424, 426; 473 NW2d 733 (1991).  "The overriding purpose of service of process rules is to ensure actual notice and opportunity to defend." *H & L Heating Co v Bryn Mawr Apartments of Ypsilanti, Ltd*, 97 Mich App 496, 502-503; 296 NW2d 354 (1980). MCR 2.105 governs service of process for the summons and complaint.

Under MCR 2.105(A)(2), service of process may be effectuated upon individuals by sending a summons and a copy of the complaint by registered or certified mail, return receipt requested, and service is rendered when the defendant acknowledges receipt of the mail.  Similarly, service of process upon a limited partnership, a domestic or foreign corporation, or a partnership association or unincorporated voluntary association, may be effectuated by serving a summons and a copy of the complaint by registered mail to an officer or agent of such entities.  See MCR 2.105(C)(2); MCR 2.105(D)(2); MCR 2.105(E)(2).  Under MCR 2.116(D)(1), "a defendant waives the ability to object to service of process under MCR 2.116(C)(3) unless the objection is raised in the defendant's first motion or responsive pleading." *Al-Shimmari v Detroit Medical Ctr*, 477 Mich 280, 291-292; 731 NW2d 29 (2007); MCR 2.116(D)(1).

In this case, Hermann failed to raise the issue of defective service of process in his first motion or his first responsive pleading.  After he filed his summary disposition motion and after he filed his answer to plaintiffs' complaint, Hermann joined the Websters' motion and the Chicago Group who had concurred in that motion.  By that point in the litigation, however, Hermann had waived any objection to service and could not obtain relief on that ground.  The circuit court,

therefore, erred by dismissing plaintiffs' unfair and oppressive conduct claim against Hermann in the 2017 Case under MCR 2.116(C)(3).

HNB as Trustee for the Webster IRAs moved for summary disposition under MCR 2.116(C)(3) in its first motion. Similarly, the Websters moved for summary disposition under MCR 2.116(C)(3) in their first motion. The Chicago Group first acted in the 2017 Case by filing a concurrence and joinder in the Websters' motion respecting plaintiffs' defective service. The record in the 2017 Case indicates that plaintiffs failed to comply with the requirements of MCR 2.105 by not sending to each defendant via certified or registered mail a summons and a complete copy of their filed complaint before the summonses expired. Instead, plaintiffs sent a summons with a copy of the caption page of the complaint by FedEx. Failure to serve a summons and a complete copy of the filed complaint under the method prescribed by MCR 2.105 deprived the circuit court of personal jurisdiction over HNB as Trustee for the Webster IRAs, the Websters, and the Chicago Group. Under MCR 2.102(E)(1), once the summonses expired, the 2017 Case should have been deemed dismissed without prejudice as to the defendants who were not properly served unless they submitted to the circuit court's jurisdiction. HNB as Trustee for the Webster IRAs, the Websters, and the Chicago Group timely raised the defective service issue, did not submit to the court's jurisdiction, and were entitled to dismissal of plaintiffs' claims against them. The circuit court lacked personal jurisdiction over HNB as Trustee for the Webster IRAs, the Websters, and the Chicago Group, and therefore, could not order these defendants to arbitration in the 2017 Case. Accordingly, the circuit court properly dismissed the 2017 Case against these defendants.

We find no merit to plaintiffs' argument that, because the Chicago Group did not oppose plaintiffs' motion to compel arbitration, the circuit court had the obligation to order them to arbitrate. Plaintiffs' failure to properly serve each member of the Chicago Group a summons and a copy of the filed complaint deprived the circuit court of personal jurisdiction over them and it could not lawfully order them to arbitration.

We now consider the propriety of the circuit court's dismissal of plaintiffs' breach of contract and tortious interference with contract relations claims against Hermann in the 2017 Case. The circuit court dismissed the breach of contract claim under MCR 2.116(C)(8) on the ground that plaintiffs lacked standing to assert that claim because it belonged to TDA's bankruptcy estate and only the trustee could assert the claim. The circuit court dismissed plaintiffs' tortious interference with contract relations claim under MCR 2.116(C)(10) because plaintiffs failed to present sufficient proof of a conspiracy by defendants. Plaintiffs assert that the circuit court should have refrained from adjudicating these claims and stayed the proceedings, and erred by granting summary disposition to Hermann under MCR 2.116(C)(8) and (10). We agree.

"If the contract is silent on the matter of who primarily is to decide 'threshold' questions about arbitration, courts determine the parties' intent with the help of presumptions." *Bienenstock*, 314 Mich App at 515-516. Gateway arbitrability issues "include questions such as 'whether the parties are bound by a given arbitration clause,' or 'whether an arbitration clause in a concededly binding contract applies to a particular type of controversy.' " *Id*. at 516 (citation and quotations omitted). Under MCL 691.1686(2), the "court shall decide whether an agreement to arbitrate exists or a controversy is subject to an agreement to arbitrate." Further, MCL 691.1686(3) provides that the "arbitrator shall decide whether a condition precedent to arbitrability has been fulfilled

and whether a contract containing a valid agreement to arbitrate is enforceable."[7] "When the issue presented is close and 'there is doubt' about whether an issue is a gateway question for the court or a procedural one for the arbitrator, 'we should resolve that doubt in favor of arbitration.' " *Bienenstock*, 314 Mich App at 517 (citation omitted).

In this case, plaintiffs and Hermann were parties to TDA's Amended and Restated Operating Agreement which required them to arbitrate disputes between them regarding "any and all legal disputes, controversies, or claims arising out of or relating to the interpretation or enforcement of this Agreement or any breach or termination thereof[.]" The plain language of TDA's Amended and Restated Operating Agreement grants broad power to an arbitrator to resolve "any and all legal disputes, controversies, or claims" as between plaintiffs and Hermann related to TDA. Defenses such as those raised by Hermann in his summary disposition motion do not fit within the gateway issue for court decision, and absent expressed intent in the parties' arbitration agreement, the circuit court must presume that these are issues for an arbitrator to decide. See MCL 691.1686(3). In his cross-appeal brief, Hermann makes no attempt and cites no authority to support the proposition that his asserted defenses were gateway issues of arbitrability to be decided by the circuit court or that the parties otherwise intended for such defenses to be decided by the court. Consequently, the circuit court erred by denying plaintiffs' motion to compel Hermann to arbitration and by dismissing plaintiffs' breach of contract claim and tortious interference claim against him. The circuit court erred by considering the merits of Hermann's defenses when it should have ordered Hermann to proceed to arbitration. Therefore, we reverse the circuit court's grant of summary disposition to Hermann in the 2017 Case on plaintiffs' breach of contract claim and tortious interference claim against him and remand for further proceedings in this regard consistent with this opinion.[8]

---

[7] The United States Supreme Court has explained that, in the absence of contrary language, "courts presume that the parties intend arbitrators, not courts, to decide disputes about the meaning and application of particular procedural preconditions for the use of arbitration." *BG Group PLC v Republic of Argentina*, 572 US 25, 34; 134 S Ct 1198; 188 L. Ed. 2d 220 (2014). Thus, the arbitrator is to decide procedural gateway matters such as "claims of waiver, delay, or a like defense to arbitrability . . . [, and] the satisfaction of prerequisites such as time limits, notice, laches, estoppel, and other conditions precedent to an obligation to arbitrate." *Id*. at 35 (quotation marks and citations omitted).

[8] We also find no merit to Hermann's argument that plaintiffs' claims are the property of TDA's bankruptcy estate. Hermann made the same argument in the TDA's bankruptcy action and asserted that plaintiffs violated the bankruptcy automatic stay by suing him in plaintiffs' two cases. The bankruptcy court recently rejected Hermann's argument. The bankruptcy court ruled that, "[t]o the extent the [state court plaintiffs] have asserted separate, direct causes of action against Hermann in the state court litigation, those claims do not involve the estate[.]" *In re Tamarack*, ___ BR ___, slip op at 8. The bankruptcy court explained that, "if a cause of action belongs solely to the estate's creditors, then the trustee has no standing to bring the cause of action on behalf of the estate." *Id*. The bankruptcy court considered whether plaintiffs' claim against Hermann for unfair and oppressive conduct constituted a direct or derivative right of action and concluded that

In the 2018 Case, the circuit court ordered Hermann and the Websters to arbitration on plaintiffs' unfair and oppressive conduct claim and stayed the judicial proceedings as to them. On remand, the circuit court should order Hermann to arbitration of all of plaintiffs' claims asserted in the 2017 Case. Respecting the other defendants, because the circuit court lacked personal jurisdiction over them in the 2017 Case, the court properly dismissed the case as against them.

Plaintiffs argue further that the circuit court erred by failing to issue an order staying the proceedings pending its decision on arbitrability and by not ordering all parties to arbitration. Plaintiffs assert that, once they filed their motion to compel arbitration in the 2017 Case, the circuit court was required to issue a mandatory stay and when it did not do so, they were prejudiced by the circuit court's consideration and decision to grant HNB as Trustee for the Webster IRAs summary disposition under MCR 2.116(C)(8) and (10) in both of their cases. Plaintiffs also take issue with the circuit court's conclusion that HNB had not signed TDA's Amended and Restated Operating Agreement and had no obligation to submit to binding arbitration solely on the ground that plaintiffs failed to produce a copy of the operating agreement signed by HNB. Plaintiffs contend that, by addressing the substance of their claims and dismissing them completely on the merits, the circuit court improperly shifted the burden upon them to prove that HNB as Trustee for the Webster IRAs agreed to arbitrate. Plaintiffs argue that HNB bore the burden of establishing the right to avoid arbitration and had the court stayed the proceedings it would not have so erred.

Under MCL 691.1687(1)(b), on motion of a person who establishes the existence of an arbitration agreement and alleges that another person has refused to arbitrate, if the person opposes the motion to compel arbitration, the circuit court shall "proceed summarily to decide the issue and order the parties to arbitrate unless it finds that there is no enforceable agreement to arbitrate." Under MCL 691.1686(2), the circuit court must "decide whether an agreement to arbitrate exists or a controversy is subject to an agreement to arbitrate." MCL 691.1687(2) provides that, if the "court finds that there is an enforceable agreement to arbitrate, it shall order the parties to arbitrate." If the circuit court finds that no enforceable arbitration agreement exists "it shall not order the parties to arbitrate[.]" MCL 691.1687(3). "The court shall not refuse to order arbitration because the claim subject to arbitration lacks merit or grounds for the claim have not been established." MCL 691.1687(4). If the circuit "court orders arbitration, the court on just terms shall stay any judicial proceeding that involves a claim subject to the arbitration." MCL 691.1687(7).[9] A party seeking arbitration bears the initial burden to show the existence of an agreement to arbitrate. See *McKinstry v Valley Obstetrics-Gynecology Clinic, PC*, 428 Mich 167,

---

under MCL 450.4515, plaintiffs' cause of action constituted a claim for damages directly inflicted upon them by Hermann for shareholder oppression, and therefore, not a derivative action subject to the automatic stay and property of TDA's bankruptcy estate. *Id*. at 9. The bankruptcy court also was not persuaded by Hermann that plaintiffs' other claims against him were derivative claims and concluded that plaintiffs asserted state court causes of action based on alleged injuries that they suffered directly. *Id*. at 10-11. We agree with the bankruptcy court's analysis and conclude that Hermann's argument that plaintiffs' claims in the two cases are not property of TDA's bankruptcy estate.

[9] See also MCR 3.602.

173; 405 NW2d 88 (1987). The burden then shifts to the party seeking to avoid arbitration to show that it is not subject to arbitration. *Altobelli*, 499 Mich at 295.

Respecting plaintiffs' claims against the Webster IRAs and the right to have those claims resolved through arbitration, plaintiffs were required to establish the existence of an agreement to arbitrate and that either the Webster IRAs or HNB as Trustee for the Webster IRAs constituted a party to that agreement. The parties and the circuit court correctly agree that TDA's Amended and Restated Operating Agreement contained an enforceable arbitration provision. The circuit court, therefore, had to determine the threshold issue whether either the Webster IRAs or HNB as Trustee for the Webster IRAs constituted a party to that agreement. If either the Webster IRAs or HNB as Trustee for the Webster IRAs were a party to that agreement, the party had the obligation to submit to binding arbitration. If neither were, the circuit court could not order either to arbitrate.

Plaintiffs alleged in their complaints in the two cases that the Webster IRAs were parties to TDA's Amended and Restated Operating Agreement. The record reflects that, in relation to the 2017 Case, HNB as Trustee for the Webster IRAs' counsel asserted to plaintiffs' counsel in response to plaintiffs' demand for arbitration that he "did not believe" that HNB was a party to the agreement or that the Webster IRAs were parties to it. In its motion for summary disposition in the 2017 Case, HNB as Trustee for the Webster IRAs asserted that it lacked awareness of any signed document that required the IRAs to arbitrate any claims. In the 2018 Case, HNB as Trustee for the Webster IRAs asserted again that it lacked awareness of any operating agreement or other document signed by the Webster IRAs or HNB as Trustee for the Webster IRAs that would require the IRAs to arbitrate any claims. HNB asserted further that the Webster IRAs "invested $250,000 in [TDA]" and had status as a secured lender under a note, subordinate mortgage, and loan agreement.

Plaintiffs argue that HNB as Trustee for the Webster IRAs never denied signing TDA's Amended and Restated Operating Agreement and that HNB's argument, based solely on the absence of a signed agreement, failed to meet its burden to avoid arbitration. In support of their contention that either the Webster IRAs or HNB as Trustee for the Webster IRAs constituted a party bound by the agreement to arbitrate, plaintiffs submitted to the circuit court and relied upon TDA business documents that identified the Webster IRAs as Class A members which had exercised voting rights in relation to the two instances in which Hermann sought to amend TDA's Amended and Restated Operating Agreement to create Class AA and Class AAA members with superior rights to Class A members. Plaintiffs also submitted and relied upon Daniel Webster and Barbara Webster's affidavits in which they attested that their respective IRAs were members of TDA with specific percentages of voting rights and that they were the signatories on their IRAs which were Class A members of TDA. In their respective affidavits, the Websters attested that they each voted on behalf of their IRAs to enforce Hermann's personal guaranty. Plaintiffs also relied on Hermann's deposition testimony in which he essentially affirmed that the IRAs were Class A members with voting rights. Plaintiffs argued that the issue whether the Websters could vote on behalf of the IRAs constituted an issue for the arbitrator to decide. Further, they argued that whether the Webster IRAs were Class A members or merely lenders constituted a genuine issue of material fact precluding summary disposition.

The record reflects that HNB did not submit documentation such as trust agreements or other documents showing the establishment of the IRA trusts or the dates on which created,

-18-

establishing its status as trustee for the Webster IRAs, or setting forth the terms of the three trusts' management and control. HNB did not submit any sworn testimony by a witness establishing that HNB served as the trustee for the Webster IRAs. Nor did HNB present sworn testimony of a witness that established that the Webster IRAs were not, nor had ever been, Class A members of TDA, had not signed the operating agreement at any time, nor conducted any activity as a Class A member of TDA, such as voting percentage interests in relation to TDA's business and affairs.

The record reflects that HNB's counsel made representations to the circuit court unsupported by evidence. HNB relied exclusively for its position that the Webster IRAs had creditor status as lenders to TDA on the loan related documentation submitted to the circuit court. However, HNB provided no sworn testimony regarding the loan transaction(s) and documents memorializing them upon which it relied. The record does not reflect whether the circuit court analyzed the loan transactions documents on which HNB relied or considered the apparent factual issues raised by the accompanying "Exhibit A" to those documents.

The record reflects that HNB also took issue with the Websters' affidavits on which plaintiffs relied on the ground that the Websters made those affidavits in another proceeding to which HNB had not been a party. HNB as Trustee for the Webster IRAs relied on other affidavits of Daniel Webster and Barbara Webster signed by them in 2018 in which they attested that they told plaintiffs' counsel in 2015 that they did not believe that they had authority in 2015 to act on behalf of the Webster IRAs and asserted that plaintiffs' counsel drafted their 2015 affidavits.[10]

The record reflects that the circuit court found dispositive plaintiffs' failure to present a copy of TDA's Amended and Restated Operating Agreement signed by HNB as Trustee for the Webster IRAs. The circuit court rejected the admissible evidence presented by plaintiffs including the TDA business documents that indicated that the Webster IRAs were Class A members and had exercised voting rights as Class A members separate and apart from the Websters' personal Class A membership and exercise of their voting rights. In so doing, the circuit court failed to view the evidence in a light most favorable to the nonmoving party. The record reflects that plaintiffs and

---

[10] We note that Daniel Webster and Barbara Webster's 2018 affidavits attest that they each respectively had "knowledge of the facts stated herein and I am **incompetent** to testify to said facts if called upon to do so." (Emphasis added.) The record lacks clarity regarding how the circuit court regarded such affidavits that expressly provide that the affiants lacked competency to testify to the matters contained in their affidavits. We are also cognizant that in the previous arbitration proceeding the Websters provided affidavits that plaintiffs' counsel submitted and then the Websters provided other affidavits to Hermann's counsel that were submitted to the arbitrator to void their 2015 original affidavits on which plaintiffs relied. The record reflects that Daniel Webster filed another affidavit in the 2018 Case in which he attested that HNB as Trustee for the Webster IRAs loaned $250,000 to TDA, and that none of the loan transaction documents contained an arbitration clause and that HNB did not sign the TDA Amended and Restated Operating Agreement. Faced with the Websters' conflicting affidavit testimonies, in the context of motions for summary disposition under MCR 2.116(C)(8) and (10), the circuit court could not weigh the credibility and determine the veracity of the affiants' testimonies. At the very least, their conflicting affidavit testimony created issues of fact precluding summary disposition.

-19-

HNB as Trustee for the Webster IRAs presented conflicting evidence in support of their positions. As such, plaintiffs established the existence of genuine issues of fact precluding the grant of summary disposition in favor of HNB as Trustee for the Webster IRAs on the issue whether the Webster IRAs or HNB as Trustee for the Webster IRAs were Class A members of TDA governed by TDA's Amended and Restated Operating Agreement. The lack of a signature on an arbitration agreement is not dispositive of this issue under the circumstances of these cases.

Because the record before us is not dispositive on this issue, further development of the record is required for proper determination of the issue whether either the Webster IRAs or HNB as Trustee for the Webster IRAs constituted a party to TDA's Amended and Restated Operating Agreement obligated to submit to binding arbitration. Based upon the record before us, we conclude that the circuit court could not properly grant HNB as Trustee for the Webster IRAs summary disposition under MCR 2.116(C)(8) and (10) in both the 2017 Case and the 2018 Case. Only if, after further development of the record, admissible evidence establishes that either the Webster IRAs or HNB as Trustee for the Webster IRAs were a party to the TDA Amended and Restated Operating Agreement, can the circuit court decide the threshold issue whether an agreement to arbitrate exists between plaintiffs and the Webster IRAs or HNB as Trustee for the Webster IRAs. Accordingly, we reverse and remand for further proceedings in this regard.

Plaintiffs also argue that the Chicago Group's failure to oppose their motion to compel arbitration required the circuit court to order them to arbitration. The record in the 2018 Case does not indicate that the Chicago Group sought summary disposition of plaintiffs' claim against them or that the circuit court entered an order on the merits of plaintiffs' claim against them. The record reflects that the Chicago Group answered the complaint and submitted a civil pretrial statement. The Chicago Group did not file an opposition brief to plaintiffs' motion to compel arbitration. The Chicago Group's counsel, however, appeared at the hearing on plaintiffs' motion to compel arbitration and argued to the circuit court that his clients had not seen a copy of the TDA Amended and Restated Operating Agreement signed by them, and therefore, the court could not order them to arbitration. The Chicago Group's counsel did not support the position taken with affidavit testimony or other documentation. The Chicago Group's counsel made an oral motion to dismiss plaintiffs' claim against them under MCR 2.116(C)(8) on the ground that plaintiffs failed to allege specific wrongdoing by any of his clients. The Chicago Group, therefore, requested that the circuit court deny plaintiffs' motion to compel arbitration. Plaintiffs' counsel countered that a signature on the operating agreement was not dispositive because the Chicago Group purchased memberships in TDA and stated that plaintiffs would obtain the evidence through discovery. The Chicago Group's counsel essentially responded that the previous arbitrator decided that his client did not have membership interests because Class AA and Class AAA interests were not created with the consent of Class A members resulting in their not being members of TDA. He argued that their status as nonmembers required the circuit court to rule that they were not bound by the arbitration provision. The circuit court found that plaintiffs presented no evidence that the Chicago

Group were signatories to the TDA Amended and Restated Operating Agreement.[11]  Therefore, it concluded that they were not subject to plaintiffs' motion and did not order them to arbitration. Because the record reflects that the Chicago Group opposed plaintiffs' motion to compel arbitration, the premise on which they base their claim of error lacks merit.  The circuit court was not required under the circumstances to order them to arbitration.

Plaintiffs also argue that the circuit court allowed bias to cloud its decision regarding the selection of the arbitrator as part of its ruling compelling the Websters and Hermann to arbitration. We find plaintiffs' arguments meritless.  Plaintiffs fail to support their contentions with citation to any authority that requires, in distinct and separate arbitration proceedings, that the arbitrator who presided over the first arbitration must serve as the arbitrator over later proceedings involving different parties and claims.  Moreover, the record does not remotely suggest that the circuit court made its decision based on bias or impartiality of any sort.

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.  We do not retain jurisdiction.

/s/ Mark T. Boonstra
/s/ Michael J. Riordan
/s/ James Robert Redford

---

[11] We note that the record reflects that plaintiffs submitted deposition testimony of the Chicago Group's former counsel in which he testified that he represented the Chicago Group who were investors in TDA and held Class A and Class AA membership interests.  That testimony supported plaintiffs' assertions.  Plaintiffs' counsel did not bring this to the circuit court's attention and appears to have relied on TDA's business documents which the circuit court apparently rejected because plaintiffs failed to submit an operating agreement signed by any of the Chicago Group.